THE PULLMAN COMPANY

*v.*

THE CITY OF CHICAGO.

*Opinion filed December 22, 1906.*

1. EMINENT DOMAIN—*when amount of verdict will stand on appeal.* The amount of compensation awarded by the jury in condemnation will not be disturbed for inadequacy, on appeal, where the jury viewed the premises, the evidence was conflicting, and the verdict is within the range of the testimony and does not appear to have been the result of passion or prejudice.

2. SAME—*effect where defendant owns practically all the land in vicinity of that condemned.* If the ownership or control by the defendant corporation of practically all the land in the vicinity of the land condemned affects land values in the vicinity and the value of the land condemned, the fact of such ownership or control is a proper element to be considered in determining the fair cash market value of the land to be taken.

3. SAME—*when proof that there were vacant houses in the vicinity is harmless.* If the defendant in condemnation offers evidence of rental values of land in the vicinity in support of the estimates of value made by its witnesses, who based such estimates upon the income which would be derived from the land condemned if flat-buildings were erected thereon, it is not harmful to permit plaintiff's witnesses to state that they had observed a number of vacant houses in the neighborhood.

4. SAME—*what evidence is too remote.* In the condemnation of vacant property, proof of the amount of rents derived from improved property in the neighborhood which had been recently sold, and of the income that could be derived from other vacant property in the vicinity if buildings were erected thereon, is too remote and collateral to be admissible.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

RUNNELLS & BURRY, and F. B. DANIELS, for appellant.

JAMES MAHER, and ANGUS ROY SHANNON, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On September 12, 1905, the city of Chicago, in trust for the use of schools, filed its petition in the circuit court of Cook county for the condemnation of a tract of land in the city of Chicago for a school site. The land sought to be taken is a vacant tract, bounded on the north by One Hundred and Thirteenth street, on the east by Watt avenue and on the west by Morse avenue. It has a frontage of 264 feet on One Hundred and Thirteenth street and a frontage of 285 feet on each of the avenues by which it is bounded. It is the north half of a block, the south half of the block being improved with residence buildings. The property in question is located in that portion of the city of Chicago which formerly comprised the town of Pullman. This portion of the city contains a number of large manufacturing plants. The property in the immediate vicinity of that sought to be taken is improved with houses and flats built about twenty-two years ago and occupied by employees of the manufacturing plants as tenants. The vacant tract here involved was at the time of the trial, and had been for some time prior thereto, used, by leave of appellant, as a park and playground by the residents of that neighborhood.

Upon the trial the petitioner called four witnesses, each of whom testified that at the time the petition was filed the fair cash market value of the land sought to be taken was $14,250. The respondent, the Pullman Company, called three witnesses to testify to the value of the property. One

of these fixed the value at $40,000, another at $40,900 and the third at $42,750. The jury viewed the premises and returned a verdict awarding to the Pullman Company $14,250 as compensation for the land. After overruling a motion for a new trial and a motion in arrest of judgment the circuit court entered a judgment that upon payment of $14,250 and costs of suit to the county treasurer for the benefit of the owners, the petitioner might enter upon the land for the uses and purposes set forth in the petition. This appeal is prosecuted by the Pullman Company from that judgment.

Appellant first urges that the verdict of the jury and the judgment of the court award inadequate compensation for the land. In this connection it is said by appellant that although the witnesses for appellee testified, on their direct examination, that $14,250 was the fair cash market value of the land, the cross-examination of each disclosed that the land was of greater value than the amount named in the direct examination of the witness. We have carefully examined the testimony of each of the appellee's witnesses. The evidence given upon the cross-examination of three of these witnesses is entirely consistent with their testimony in chief, to the effect that the value of the property was $14,250 when the petition was filed, and although the facts testified to by the remaining witness upon his cross-examination were such that the jury might have found from those facts that the value of the property exceeded the amount named by the witness upon his direct examination, still the jury were not obliged to disregard the testimony given by the witness upon his direct examination nor the testimony given by the other three witnesses who were called by appellee.

The testimony of the witnesses introduced by appellee differed materially from that of the witnesses offered by appellant, in regard to the value of the land. This conflict is to a great extent accounted for by the methods adopted by the witnesses in arriving at their estimates of value. While the witnesses for appellee testified that they based their esti-

mates of value upon their experience in handling tracts of land similarly located with regard to manufacturing plants, surrounding buildings, neighborhood, inhabitants, transportation facilities, and the like, the witnesses for the appellant arrived at their estimates of value by dividing the tract into imaginary twenty-foot lots fronting upon Morse avenue and Watt avenue, estimating the cost of a building on each lot and the yearly rental which could be obtained from the premises with such building thereon, fixing the value of the lot and building at ten times the yearly rental, subtracting the estimated cost of the building from the value of the lot and building obtained as above indicated, the remainder thus obtained representing the value of each twenty-foot lot without the improvement, and multiplying this remainder by the total number of twenty-foot lots, thus arriving at the value of the vacant tract as it existed on September 12, 1905.

In our judgment the jury were warranted in finding a verdict in accordance with the testimony of the witnesses for appellee. The jury viewed the premises, the evidence was conflicting, the verdict was within the range of values as testified to on the trial, and does not appear to have been the result of passion, undue influence or other improper cause, and it should not be disturbed, therefore, on the ground of inadequacy. *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547.

It is next urged that appellant was prejudiced by alleged improper conduct on the part of the attorney for the appellee during the course of the trial. The principal complaint in this regard is that improper matters were brought to the attention of the jury by questions propounded to witnesses.

Appellant showed by one of its witnesses that a tract of land containing one-third of an acre, located on Morse avenue about 300 feet north of the property here involved and having situated thereon a business building, had been sold about two years prior to the trial for $10,250; that the purchaser had stated that he considered the building worth

$2000, and that the witness agreed with the purchaser that that amount was a fair valuation for the improvements. The same witness was afterwards called by appellee and was asked if he knew the assessed value of the improvements on that land, to which he replied that he did not. He was then asked if he did not know that the property was assessed at $7000. The attorney for appellant remarked to the attorney for appellee that the latter knew that amount was below the value, to which the attorney for appellee replied that he knew what the records showed. The court ruled that it was improper to show the assessed value of that property. It is contended that as this sale was the only one shown to have been made in the immediate neighborhood it was an important factor in determining the value of the land sought to be taken, and that by the conduct of the attorney for appellee in telling the jury, in effect, that the records showed the property was assessed at $7000, appellant was deprived of the benefit of having the jury consider the value of the Morse avenue property, based on that sale, in fixing the value of the property sought to be taken in this proceeding. The form of the question, in which it was suggested that the assessed value of the property was $7000, was highly improper. In our judgment, however, the bearing which the improper matter had upon the issue then before the jury was too remote to have affected the verdict. It is extremely improbable that the jury, with positive testimony before them as to the price for which property had been shortly prior thereto sold, would, in considering the value of such property, disregard the evidence as to the sale and be guided by a remark of counsel concerning the assessed value, especially in view of the fact that the court expressly held that the assessed value was not proper for the consideration of the jury in determining the market value of that piece of property. Had the remark of counsel been in reference to the assessed value of the land sought to be taken a different question would be here presented.

Complaint is also made of the conduct of counsel for appellee in repeatedly propounding questions to witnesses calculated to show to the jury that the Pullman Company owned all of the property in the vicinity of that sought to be condemned. Objections were sustained to most of these questions, although there was evidence admitted, some over objection and other without objection, from which it clearly appears that the Pullman Company owns or controls the greater portion, if not all, of the land and buildings thereon in that immediate neighborhood. We cannot accede to appellant's contention that a hostile feeling was aroused in the jury against appellant by the attempts to show that it owned the surrounding property. No reason why such feeling should be created by the questions propounded is suggested by counsel for appellant, and we are unable to conceive of any reason why the jury would be prejudiced against appellant because it was the owner of all, or practically all, the property in that immediate vicinity. If, however, such ownership or control affected land values in that vicinity and affected the value of the property sought to be condemned, it was a proper element to be considered in determining the fair cash market value of the land to be taken.

It is next contended that the court erred in permitting witnesses to testify that they observed a number of vacant houses in the neighborhood. Appellant offered considerable evidence in regard to rental values in the neighborhood in order to support the estimates of value given by its witnesses, which were based upon the income which would be derived from the property if it were covered with two-story flat buildings, as above pointed out. We think the evidence complained of was harmless. At the most it would only bear on the extent of the demand for property for rental purposes by would-be tenants.

The court properly refused to permit appellant to show the amount of rents derived from other property in the neighborhood which had been recently sold, and to show the

income that could be derived from other vacant property in the vicinity if buildings were erected thereon. Such collateral matters would throw no light upon the value of the land sought to be taken and would but uselessly encumber the record.

Other objections made to the action of the court in passing on objections to evidence we regard as hypercritical, and we will not extend this opinion by discussing them.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*