(Nos. 2531, 2532, consolidated,

STEVE CASKY, ADMINISTRATOR OF THE ESTATE OF FRANK CASKY, DECEASED, No. 2531 AND PETER TODOROFF AND MAMIE TODOROFF, No. 2532, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1939.*

H. GRADY VIEN, for claimants.

JOHN E. CASSIDY, Attorney General; GLENN TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Frank Casky, by his attorney, filed his complaint herein on October 31, 1934, and later amended it. He avers that he is a resident of the County of Madison and State of Illinois, and the owner of the following described property, to-wit:

Lots numbered Twenty-one (21), Twenty-two (22), Twenty-three (23) and Twenty-four (24), in Block numbered Two (2) Amended Plat of Clover Leaf Addition to Madison, Illinois, as the same appears of record in Plat Book 7 at page 43 in the Office of the Recorder of Deeds of Madison County, Illinois, situated in the County of Madison and State of Illinois,

and that he was the sole occupant of the property which had certain improvements thereon consisting of a one story frame

building with saloon, three living rooms, outbuildings containing three garages and four sheds; that prior to the construction work hereinafter referred to, and since the year 1925, the claimant has occupied the said premises and operated a confectionery and a lunch room thereon, and claimant avers that he did a very lucrative business, making a comfortable living for himself.

Claimant also charges that the State of Illinois, Department of Public Works and Buildings, Division of Highways, was then engaged in the construction of a concrete overhead bridge spanning the tracks of the Litchfield and Madison Railroad and the Nickelplate Railroad on U. S. Highway No. 67 (being also Illinois Highways Nos. 3 and 4) in the County of Madison and State of Illinois, being immediately in front of the property of the claimant; that such construction entails a span of considerable length, together with a fill several hundred feet in length, resulting in an entire obstruction of the view from the property of claimant, and as a result all of said property is on a level thirty feet (30') lower than the usual travel on the overhead bridge; that the United States Highway No. 67 provides a main artery of travel through the State of Illinois, and particularly between many cities in Madison County and in St. Clair County; that hundreds of automobiles, trucks and other vehicles use it daily, many of the drivers and occupants thereof patronizing the business of said claimant; that, after the completion of said project, the traffic on and along said highway will not pass immediately in front of the property of the claimant, but at an elevation of some thirty feet (30') above it; and that it will be impossible for traffic to reach the property of claimant without using the overhead bridge, and that it will be very inconvenient and impracticable for them to do so.

It is also averred that the property was purchased and the improvements thereon erected and constructed at a great cost of money, and that the present value of the property, prior to the commencement of the construction of said overhead bridge, was the sum of $14,000.00; that the average annual net income from said business was approximately $1,500.00; that the value of the property and the income therefrom have been greatly reduced since the construction of said overhead bridge; that during and on account of the construction complained of, the walls and ceilings of the improve-

ments on the above described premises have cracked, the doors have jammed, the floors have become warped, and the property has become damaged in other respects.

Claimant further avers that this matter was taken up with Mr. Wilson, who is in charge of the East St. Louis office of the Division of Highways, State of Illinois, who informed the attorney or representative for the claimant that the matter could only be presented to this court; that it was the policy of the Division of Highways not to consider the question of damages to land not taken in such cases, unless part of the land was actually taken. Claimant also charges that he has not received any payment on account of this claim and that no part of the claim has been satisfied.

Claimant further avers that because of the construction of the concrete overhead bridge by the State of Illinois, the claimant will be greatly damaged, on account of reduction in the value of the property, and that he will suffer a severe loss in business, and that he will in many other respects sustain damages, and damages in the sum of $20,000.00 are asked.

In Number 2532, Peter Todoroff and his wife, as joint tenants, are seeking damages. They are represented by the same counsel and aver that they are the owners of the following described property, to-wit:

Lots numbered Twenty-eight (28), Twenty-nine (29) and Thirty (30) in Block numbered Three (3), Clover Leaf Addition to Madison, as per amended plat thereof, recorded in Plat Book 7 at page 43 in the Office of the Recorder of Deeds of Madison County, Illinois, (except that part thereof heretofore conveyed to the said County of Madison); situated in the County of Madison and State of Illinois;

that said property has certain improvements thereon, consisting of a one story brick building, forty-eight feet long by twenty-four feet wide, containing a lunchroom, a filling station, three living rooms, with a finished basement under the entire structure, and furnace therefor; a one story frame double garage and a one story building adjoining the brick building, being twenty-three feet long by sixteen feet wide and used for saloon purposes; that the brick building was erected in 1929, the garage in 1930 and the saloon building in 1932.

Claimant, Peter Todoroff, further avers that since the year of 1929, he and his wife have operated the filling station and lunchroom on the premises hereinabove described; and

it is claimed that they did a very lucrative business, making a very comfortable living for themselves; that since 1932 they have likewise operated the saloon.

It is charged that the State of Illinois, through the Department of Public Works and Buildings, Division of Highways, was engaged in the construction of a concrete overhead bridge over the same railroad as described in the Casky complaint and over the same highway and immediately in front of the property of the claimants. Facts showing similar damages to those in the Casky case are also averred.

It is charged that the value of the property prior to the commencement of the overhead bridge, was $17,000.00; that the average annual net income from said business was approximately $3,000.00; that the value of the property and the income therefrom have been greatly reduced by virtue of the construction of the overhead bridge; that during and on account of the construction of the overhead bridge, the walls and ceilings of the improvements on the premises hereinabove described have cracked, the doors have jammed, the floors have become warped, and the property has become damaged in other respects.

A similar allegation was made as to presentation of this matter to Mr. Wilson, who is in charge of the East St. Louis office of the Division of Highways, State of Illinois.

Claimants further charge that because of the construction of the concrete overhead bridge, the claimants will be greatly damaged, the property will be greatly reduced in value and they will suffer a severe loss in business, and sustain damages in many other respects, and damages in the sum of $25,000.00 are asked.

In the bill of particulars attached to the complaint in the Casky case, the damage to walls, ceilings and buildings, caused by driving of piles, is placed at $1,000.00, depreciation in value of property at $10,000.00, and loss to business at $9,000.00, or a total of $20,000.00.

In a bill of particulars attached to the complaint in the Todoroff case, the damage to walls, ceilings and building, caused by driving of piles, is placed at $2,000.00, depreciation in value of property at $13,000.00 and loss to business at $10,000.00, or a total of $25,000.00.

Both of these claims, founded upon the same facts, have by motion, been consolidated, and we will consider them together.

There is a stipulation to the effect that the State is building a concrete overhead bridge in front of the property of these claims. By an order of the Illinois Commerce Commission, under date of March 27, 1934, it is so stipulated. This order provided that the existing grade crossing of State Bond Issue 3 with the tracks and rights of way of the interested respondent railroad companies at the aforesaid overcrossing location be abolished.

Evidence was offered on behalf of the cost price of the properties and this was objected to. It is the contention of the Attorney General that the damages, if any, are the difference between the fair cash market value of the property immediately prior to the construction of the bridge and immediately thereafter.

In the Todoroff case, Mrs. Todoroff testified that she did not remember when they bought the lots, but apparently it was on October 27, 1926; that they paid $950.00 for the lots. She testified to several different amounts that they paid for the improvements thereon. She could not say which way the lots faced. She was of the opinion that there was a 50 foot front on Lots 28 and 29, and that they paid $950.00 for the three lots; that they held them for awhile and then sold 2 of them to the State for $800.00 (Abst. 6). She further testified that when they built the building they knew that the bridge was going to be built. Her testimony in part is abstracted as follows: "At the time the State bought these lots from me, the hard road was going to be built across the railroad tracks, right across to Madison, just the road, no bridge at all, on the surface, the same level as the tracks. The State said that that was why they bought these lots, for the road. That was what put the idea in my head to build a filling station. They said I would have an independent living. Then they got permission to put that fill in there. They had to get permission to fill that part in there with cinders, after that you couldn't get to our place. We had to fill up the hole before we built our buildings, in order to bring it up to a level with the road in front."

It is not clear from the evidence which lots were sold. It is quite apparent from the evidence that the building of the road was what prompted the claimant, Todoroff, to put in a filling station.

We think, as a general rule that the price which the owner gave for the property may be put in evidence. Lewis on Eminent Domain, Section 444; Mills on Eminent Domain, Section 168. But it must appear that the owner has purchased the property within a time so recent, that its cost will afford a fair indication of its present value. *Lanquist* vs. *City of Chicago*, 200 Ill. 69, 72.

The difference between the fair cash market value at the time the improvement is made and at the time of the completion of the improvement, is the sum which the owner is entitled to recover as damages. In order to determine such value, evidence may be introduced of sales of similar property in the same neighborhood, but it must appear that such sales were made at or about the time that the improvement was made. This rule was deducted from the rule that in a condemnation suit, in order to determine such value, evidence may be introduced of sales of similar property in the same neighborhood, but it must appear that such sales were made at or about the time of the filing of the petition. *Peoria Gas Light Co.* vs. *Peoria Terminal Railway Co.* 146 Ill. 372; Lewis on Eminent Domain, sec. 444.

It is quite apparent in this case that the property was purchased in October, 1926, and the claim for damages was not filed until 1934. It cannot be said that evidence as to the cost of the property eight years before necessarily shows the present market value thereof. In the lapse of the intervening years, the value may have risen or fallen to such an extent as to be higher or lower than the purchase price. In 1926 there was evidence of great prosperity in this country and that period of time is frequently referred to as the "peak of prosperity."

Claimant sold two lots to the State for the sum of $850.00, but she cannot determine exactly by guess work how much of the purchase price was paid for each individual lot, and it is quite apparent that the State bought these lots for the very purpose for which they were used.

In the case of *The Pittsburg, Cincinnati, Chicago and St. Louis Railway Company* vs. *Gage, et al.*, 286 Ill. 213, it was held that proof of price paid for property pending condemnation is not admissible. There is no evidence in the record as to the rental value of the property for the reason that the property never was rented.

582

In the condemnation of vacant property, proof of the amount of rents derived from improved property in the neighborhood which had been recently sold, and of the income that could be derived from other vacant property in the vicinity if buildings were erected thereon, is too remote and collateral to be admissible. *Pullman Co.* vs. *City of Chicago,* 224 Ill. 248.

We, therefore, hold that the profits derived from the sale of gasoline in a filling station and of liquors and luncheons at a lunchroom and saloon are too vague, indefinite and uncertain to be received in evidence.

Peter Todoroff, claimant, further testified (Abst. 9) as to the value of the property and the sale of the two lots to the State for $850.00. His testimony is quite similar to that of his wife. He testified that he closed up business there because there was no business after the bridge was built. The business came principally from the highways, that is, people travelling along the highway. He testified that when the road was open before the building of the bridge, he did a business of $20.00 or $30.00 per day, and that he was doing no other work; that he was just watching the business. He had a saloon, filling station and lunch room. His wife took care of the kitchen and living rooms, and Perigo was watching the saloon. He also testified that as soon as they commenced driving the piling, their walls and ceilings cracked—two inches in some places; that there was a crack 48 feet long on a concrete floor, right in the middle of the building, extending from one room to the other; that the doors did not close and before the building of the bridge there weren't any such cracks. Claimant figured that this damage was caused by shaking the ground when they drove the piles. The bridge is about 50 feet away from claimant's property line and the dirt fill is about 30 feet away from it. The bridge is about 30 or 40 feet high at the fill at the closest point to claimant's property is about 30 to 40 feet.

Neither of these claimants testified as to the value of the property before building the bridge or after the bridge was completed.

Frank Casky testified that he is also a claimant and the owner of lots 21, 22, 23 and 24 in Block 2 Amended Plat of Clover Leaf Addition to Madison County, Illinois; that he bought this land in 1923 and built in 1925; that he paid $800.00 for the lots, and in 1925 put a frame building on the

premises consisting of five rooms, two bedrooms, and a kitchen, two back rooms for business, a saloon, and a few chairs and tables; that the building cost $3,000.00; that when he purchased the property, it was not on a level with the road; that he paid $2,000.00 to fill it in with cinders and he testified to many other improvements, such as sidewalks of $40.00; outside toilets of $25.00, fence around the property at a cost of $150.00, and a summer kitchen at $135.00. The claimant further testified that he spent money for water and that he put on a new roof, and right after he got through, it leaked rain water; that he paid $60.00 for papering. There were many other items testified to which we cannot consider because we must take this property as a whole, and the value must be determined as hereinbefore announced at the time the improvement was made, and then again when the improvement was completed. The claimant also testified to considerable amount of damages caused by loss of business, and on cross examination he stated that the damages testified to resulted from driving of the piles. On re-direct examination, claimant testified concerning dust storms "when they were putting that dirt in" and said that when the wind was favorable they would have dust storms four or five days of the week. He also testified to great noises at the time of the construction of the bridge to the effect that one could hardly hear anybody talking and that went on from morning to evening.

That since the filing of his claim, Frank Casky has died and his death has been suggested to the court and Steve Casky, as administrator of the estate of Frank Casky, deceased, has been substituted as party claimant.

Lowell Perigo, another witness testified for claimants, that he lived with Todoroff and his wife for about twelve years; that he had always been in the jewelry business except during the time he worked for Todoroff running a saloon. His testimony in the main concerns the physical conditions of the property and loss of business.

This point in the record contains a stipulation that the distance from the ground floor to the main floor of the bridge is 25 feet; that the length of the steel bridge is 610 feet; that the length of the west approach to the bridge is 800 feet, and the height of the fill up to the bridge is 20 feet; that the bridge is constructed of steel girders, a skeleton, with concrete

piers, and that the purpose of the project is to abolish and eliminate the grade crossing at this location.

R. W. Sikking, another witness testified for claimants. He testified that he is in the real estate business in East St. Louis and vicinity and has been so engaged for 40 years; that he has made many appraisals in Madison and St. Clair counties for the Federal Housing Administration, which estimates the values of the properties with the Federal Housing Administration in the counties just mentioned; that he has also made many appraisals in other counties. He testified that the Frank Casky property was best adapted for business purposes, and stated he had an opinion that the fair cash value for that property in 1934 was $3,800.00, and that the fair cash market value of the same property after the improvement was completed was $1,800.00. He also testified that he had an opinion as to the fair cash market value of the Todoroff property as of September 1, 1934, and assuming it to be best adapted for business purposes, he was of the opinion it was worth $7,000.00, and that the fair cash market value of the same property after the improvement was completed was $2,500.00. He further testified that he had stopped at this property a number of times on the way to a farm that he owned north of Granite City. He testified that in the neighborhood of this property there were twelve or fifteen other houses. He stated that in fixing the value of the property he had taken into consideration all the elements that he could think of, the first element indicating that it would support a business. He also considered the size of the building and examined it and arrived as near as possible at its replacement value, taking into consideration the depreciation and the kind of building it was, and the structure itself. He testified that he took many things into consideration and could not remember all the things he had taken into consideration.

In the case of *Chicago Flour Co.* vs. *Chicago*, 243 Illinois, 268, at page 271, the Supreme Court of Illinois held:

"It is well settled that inconvenience, expense or loss of business occasioned to abutting owners by the temporary obstruction of a public street, and the consequent interference with their right of access to their property, made necessary by the construction of a public improvement, gives no cause of action against the municipality. The Constitution provides no remedy for the property owner under such circumstances. Such claim is not damage to property not taken, within the meaning of the Constitution." Citing authorities.

The State of Illinois had power to make this improvement. While the law of Illinois is as above announced, we cannot disregard the entire testimony of the witness, Sikking; neither can we give it full credit, because he took into consideration, improper elements. His testimony applied to both claimants and we will take it for what we deem it to be worth.

Witness, Sikking, also testified on cross-examination that from a real estate man's standpoint use was the determining value, and not the possibility of selling, and that for the purpose of a residence, the Todoroff property was just as good as it was before the construction of the bridge, but he would not say that was quite true of the Casky property.

O. E. Hodge another witness for the claimants, testified that he was in the real business in Granite City; that he had offices in Mount Vernon and Cairo, but that most of his business was done in Granite City. The witness testified that he was familiar with the property of the claimants; that he made appraisals of real estate; had been secretary of the Building and Loan Association for nine years, and he estimated that he had made 350 or 400 appraisals. He also testified that his company was the real estate agent for the Prudential Insurance Company of America and made appraisals for them, and had for several years. He placed the value of the Casky property as of September 1, 1934 at $2,950.00, and after the completion of the improvement at $1,000.00. He placed the value of the Todoroff property as of September 1, 1934, based upon the use for business purposes, at $7,200.00, and after the completion of the improvement at $2,000.00. He stated that the property was rather remotely located but was an ideal location for a saloon. What is said of the Sikking testimony, applies to this testimony.

Robert M. Smith, another witness for the claimants, testified that he lived in East St. Louis and has been in the real estate business for over thirty years in that city. He testified that within the last year and one half he had made appraisals for the Hottes estate, embracing over 90 pieces, and in the last five months for the First National Bank, embracing over 200 pieces; that most of these were city properties. The witness further testified that he was acquainted with the Casky and Todoroff property, and that the best use for which this property was adapted was for a saloon and the attending

features that go with such places. He was of the opinion that before the improvement the value of the Casky property was $2,500.00, and after the completion of the improvement, $1,000.00; that the best use of the property would be for residence purposes. He further testified that the walls were cracked, the roof leaked, and the floors and doors were warped. It is very apparent that business was also in his mind as one of the determining factors in fixing the value. He fixed the value of the Todoroff property before the improvement at $6,500.00, and for business purposes he figured it at a rental of $50.00 per month. He did not agree with witness Sikking as to depreciation in value, and he fixed the value after the completion of the improvement at $2,500.00.

C. I. Bergraf, another witness for the claimants, testified that he was Assistant Engineer for the State Division of Highways, located in East St. Louis; that he knew the location of the bridge, and he testified as to local conditions.

C. G. Rogers, another witness for the claimants, testified that he was the Trust Officer for the Illinois State Trust Company and had been for many years, and that he managed the real estate in the course of his employment. He testified that he was familiar with the values of real estate in St. Clair and Madison Counties, and fixed the fair cash market value of the Casky property before the improvement at $2,500.00, and after the improvement at $1,000.00; and fixed the fair cash market value of the Todoroff property before the improvement at $7,200.00, and after the improvement at $2,000.00 for residential purposes.

Philip H. Cohn, another witness for the claimants, testified that he was a realtor, and had had much experience in the vicinity of this property fixing the value of property. He testified that the Casky property was worth about $2,950.00 before the construction of the overhead bridge and $1,000.00 after the improvement was made; that the Todoroff property was worth $7,000.00 before the construction of the overhead bridge and $2,000.00 after the construction of the bridge.

Alex S. Vien, another witness for the claimants, testified that he was a resident of East St. Louis and had been for 42 years; that he was engaged in real estate, insurance and loans, and had been in that business for 35 years. He fixed the fair cash market value of the Casky property before the improvement at $3,000.00 and after the improvement at

$1,000.00, and the fair cash market value of the Todoroff property before the improvement at $7,200.00, and after the improvement at $2,200.00.

P. M. Davidson, testified for the respondent. He testified that he had lived in Granite City for the past eight years, and that he had been engaged in the real estate and insurance business for about twelve years; that prior to moving to Granite City, he lived in Troy and went back and forth. In his opinion, the Casky property was worth, immediately prior to the commencement of the construction of the improvement, $2,500.00, and was of the same value when the construction was completed. Claimant fixed the value of the Todoroff property at $4,850.00 at the time of the commencement of the improvement, and of the same value after the commencement of the improvement. He said the Casky property was put to the same use after the improvement as it was before. He took into consideration the cost of construction, its age, and location. In other words, its replacement value. It is apparent that he had given this subject much consideration and study.

J. W. Senoff, testified for the respondent. He testified that he lived at Granite City and had lived there for fourteen years, and had been engaged in real estate and insurance business for eleven years. He also had had much experience in this business. He stated that neither the Casky nor the Todoroff properties are within the corporate limits of Granite City. In his opinion the highest and best use of the Casky property, prior to the construction of the overhead bridge was for a roadside tavern and dwelling, and its fair cash market value for such use, was $2,500.00, and was of the same value after the improvement. As to the Todoroff property, the highest and best use, would make the fair cash market value $4,850.00 prior to the construction of the overhead bridge, and after the completion of the overhead bridge, considering the highest and best use, it would have the same value thereafter. He went over this property with Mr. P. M. Davidson and George H. Mueller. They also were real estate men.

Mrs. A. A. Anson also testified for the respondent. She lives at Granite City, Illinois, and has been engaged in the real estate business in Granite City for ten years. She is also acquainted with this property. In her opinion, the Casky property, before the improvement, was worth $2,200.00 and after the improvement, $1,400.00. She testified that the value

of the Todoroff property before the improvement, was $6,000.00 and after the improvement, $5,400.00.

It will, therefore, be seen that the values placed upon these properties by these witnesses greatly differed. There is much variance in the testimony. The court itself viewed the premises and the surrounding neighborhood.

It has always been held that the State is not liable in the exercise of its governmental functions, for the acts of its servants and agents in the absence of a statute making it so liable, and we have repeatedly held that the State is not liable for the acts of an independent contractor.

We are, however, of the opinion that there has been some damage and we fix the value of the damage done to the Casky property, after careful consideration of all the testimony, and of our own view of the property, and of the law pertaining to the admissibility of evidence, at the sum of $1,000.00, One Thousand Dollars, and to the Todoroff property in the sum of One Thousand Seven Hundred Fifty ($1,750.00) Dollars. Therefore an award is made accordingly.