Forest Preserve District of Cook County, a Municipal Corporation of the State of Illinois, Petitioner-Appellant, v. Adrian Tabin, et al., Defendant-Appellee.

Gen. No. 53,404.

First District, Second Division.

September 30, 1969.

Alan S. Ganz and Samuel H. Young, of Chicago (Samuel H. Young and John D. Cummins, of counsel), for appellant.

Adrian Tabin, by Foran & Wiss, of Chicago (Robert E. Wiss and Thomas T. Burke, of counsel), appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

The Forest Preserve District filed a petition on October 24, 1963, to condemn an unplatted parcel of farmland located in the northwest portion of Cook County which was owned by the defendant, Adrian Tabin. The main question presented to the jury was the fair cash market value of the parcel as of the date the petition was filed. Judgment was entered on the jury's verdict in the amount of $987,000, from which the Forest Preserve District prosecutes this appeal.

The property in question, hereinafter referred to as the "Tabin property," is an irregular, somewhat T-shaped parcel consisting of approximately 235.7 acres, 26 acres of which are situated in the Village of South Barrington and the balance of which is situated in the Village of Hoffman Estates. The property fronts to the north on Algonquin Road, and to the west on Freeman Road. Topographically, the Tabin property is rolling land, having both high and low areas. A creek intersects the property in a south-to-southwesterly direction, and the creek has tributaries which run into the low sections of the property. Improvements on the property consist of four dwellings, only one of which is modern, as well as sheds and barns employed in farming.

The Forest Preserve District conceded at trial, which was held in April 1968, that the highest and best use of the Tabin property was as a residential subdivision, but contended that the soil and drainage conditions of the property seriously affected its value for use as a subdivision. The jury was also permitted to view the property during the trial of the cause.

The Forest Preserve District called Adrian Tabin as its first witness, pursuant to section 60 of the Civil Practice Act. Tabin testified that he had owned the Tabin property since 1940 and that it was in essentially the same condition at the time of trial as it was in October 1963, when approximately 200 acres thereof were employed in farming by tenant farmers. The witness identified 24 pictorial exhibits as accurately representing the condition of the property and the buildings thereon; the exhibits were admitted into evidence. Tabin also testified that he had never had soil tests made of the property prior to March 1968.

Ben Fenger, a registered land surveyor, was called as a witness by the Forest Preserve District. He identified two exhibits, both later entered into evidence, one of which was a survey of the Tabin property and the other

an aerial photograph of the property taken in December 1968.

Robert Cipriani, a soil technician (called by plaintiff) testified that he made 112 bore samples of the property to determine the soil composition and makeup, and the depths of the various soils on the property. The record of the borings was admitted into evidence, as was a chart of the property on which was plotted the location of the various borings taken.

Lee Schlesinger, a civil structural engineer (called by plaintiff) testified extensively concerning the soil conditions of the Tabin property. He categorized the soil as inorganic, consisting mainly of peat, and also of organic silts. In the opinion of the witness, peat is wholly incapable of supporting heavy loads, and while organic silt is stronger than peat, it also is not suitable for supporting loads. The witness reviewed the 112 test borings made by witness Cipriani and also made several trips to the Tabin property for a visual inspection of the premises. Based on his professional experience in working with soils, the witness gave an opinion that the soil conditions of the Tabin property were the same at the time of trial as they were in October 1963. The witness also related the flooding and drainage conditions of the Tabin property to several flood charts and maps which were later admitted into evidence. In the opinion of the witness, an area of 62 to 65 acres of the Tabin property would have to be filled by a "clean organic fill," other than the type of soil then existing on the property, and he estimated that from 375,000 to 450,000 cubic yards of fill would be needed in order for that area to stay above water.

During the testimony of Schlesinger, the Forest Preserve District sought to introduce its Exhibits 5 and 5-A into evidence. The exhibits showed the depth and location of the soil makeup and conditions on the Tabin property. The two exhibits were identical in every respect,

except that Exhibit 5 depicted the soil depths and make-up by means of varying shades of color. Exhibit 5 was objected to and was not admitted into evidence; Exhibit 5–A was not objected to and was admitted into evidence.

Schlesinger testified on cross-examination that the flood maps admitted into evidence did not purport to show the length of time flood water would remain on the property. He further stated that the maps appeared to show flooding in areas which were then developed towns, that the maps were based on undeveloped property, and that development of land does alter water runoff considerably. Schlesinger further testified on cross-examination that many buildings are built on soils containing peat, including portions of Hoffman Estates. He also stated that he was not a land developer, but that he would simply make his findings as to soil conditions and give his data to a developer for his consideration.

Alan Waldman was called as a witness by the Forest Preserve District. The witness testified that he was a real estate appraiser and consultant, and that he also was a licensed real estate broker in Illinois. After testifying extensively as to his qualifications as an expert witness, Mr. Waldman stated that in his opinion the highest and best use of the Tabin property in October 1963 was for subdivision purposes and that its value at that time, based on the soil and drainage conditions of the property, was $365,000.

On cross-examination, the witness was questioned concerning his association with a real estate firm located in downtown Chicago which did business in Chicago's Lawndale area, and which association the witness did not mention on direct examination in relating his qualifications as an expert witness. The witness also testified on cross-examination that he had not purchased, sold, built or developed any property within the past ten years within ten miles of the Tabin property, that he considered

the availability of land in the area of subject property in arriving at his valuation of the property, and that one-acre lots on the Tabin property would be in keeping with the zoning of the property existing in October 1963, but that it was also possible to secure a change in the zoning.

Herman Walther was called as a witness by the Forest Preserve District and testified that he was a real estate broker, a land appraiser and a consultant. In the opinion of the witness, the highest and best use of the Tabin property in October 1963 was for subdivision purposes. It was the witness' further opinion that the value of the Tabin property at that time was $350,000.

On cross-examination Mr. Walther testified that a large portion of the Tabin property could be built upon, provided the builder was willing to spend about 35% more in development costs than would normally be the case in development of land. He further testified that he had never built homes, and that he never bought or sold homes within in ten to fifteen miles of the Tabin property.

James Willett, an engineer (called by plaintiff) testified that in October 1963 the closest water supply system from the Tabin property was three miles away, as was the nearest Sanitary District sewer main.

The final witness for the Forest Preserve District was Edward Look, a licensed real estate broker in Barrington, Illinois, who testified that the highest and best use of the Tabin property in October 1963 was residential subdivision, and that its value at that time was $350,000. The witness testified on cross-examination that he did not consider the availability of surrounding land in arriving at his opinion of the value of the Tabin property, that he considered the "market" in arriving at his valuation, and that he did not know whether the subdivision across the road from the Tabin property was in existence in 1963.

Also entered into evidence during the Forest Preserve District's case were three zoning ordinance exhibits. The South Barrington zoning affecting the Tabin property in October 1963 was A–3 residential, minimum one-acre lots. The Hoffman Estates zoning affecting the property at that time was also residential, minimum one-acre lots, with a lineal width of 150 feet.

Defendant called Roy Jenkins as a witness, who testified that he served on the Board of Trustees of the Village of Hoffman Estates from 1959 to 1965. The Board had occasion to consider applications for changes in zoning presented to it by the Village Planning and Zoning Committee. He testified that any lands annexed to the Village in October 1963 would have received an R–2 zoning, 10,000 minimum square feet, unless otherwise desired by the owner of the tract. He also testified that since 1959, some ten or twelve applications came before the Board for a change in the zoning and none had ever been denied. He also stated that approximately 5,000 acres have been rezoned in the Village where water and sewer facilities were not available.

George Holt testified for defendant that he is a civil engineer and also the Village Engineer for Hoffman Estates. He testified that peat and other compressible soils were not uncommon in the northwest portion of the county, especially in the location of Hoffman Estates. He further testified that there were six units of Hoffman Estates where storm retention lakes were built on low ground, usually peat areas. He testified that he would recommend that the portion of the Tabin property requiring clean fill, as testified to by Mr. Schlesinger and as shown on the exhibits, be employed as storm retention lakes, rather than be filled in. He further testified that such lakes are normally landscaped to not only add to the beauty of the subdivision, but for use as a recreational area. Holt testified that general excavation and filling

procedures would be required in developing any subdivision, and that it was not uncommon for a developer who was building on land in excess of 200 acres to bring in water and sewer services from as far as two miles.

John Cordwell testified for defendant that he is an architect and a land planner. He stated that peat was a very common problem in his professional experience in Cook County, but that the problem could be remedied by the construction of buildings with basements and, in those sections of the subdivision where the peat problem is more severe, by filling those areas with a clean, suitable soil. He stated that since peat is usually concentrated in the lower portions of the land, surface water is coincidental, and design and development of the subdivision usually involves water retention lakes.

Mr. Cordwell testified that he viewed and made a study of the Tabin property and also studied the engineering data and the Forest Preserve District's reports compiled with respect to the property. The witness prepared Defendant's Exhibits 1 and 2 which were admitted into evidence over objection.

Defendant's Exhibit 1 is a multicolored plat of subdivision of the Tabin property, dividing the parcel into 151 minimum one-acre lots. The lots, set out over a yellow background, are situated around four lakes which roughly cover lower, peat areas of the Tabin property and which are colored in blue. Each lot contains an outlined figure which represents a building, and on those portions of the Tabin property where extra support would be reqired because of the more severe soil conditions, the outlined figure is shaded. Also depicted on the exhibit are streets and cul-de-sacs, which are in white, and a riding stable and a picnic area, which are colored in green. Exhibit 1 corresponds to the zoning of the Tabin property as it existed in October 1963, minimum one-acre lots in both Villages.

Defendant's Exhibit 2 is in the same nature as Exhibit 1, but is geared to the minimum one-acre lot requirement of South Barrington and a potential 10,000 minimum square foot lot zoning change in the Hoffman Estates area; the Exhibit contains 501 lots in all. Although Exhibit 2 shows five storm retention lakes, streets, cul-de-sacs, and green shaded areas, it does not depict a riding stable or a picnic area as does Exhibit 1.

On cross-examination, Mr. Cordwell testified extensively as to the various steps and requirements which would have been needed to bring the subdivisions contemplated by the two exhibits into reality. He further stated that he was not familiar with the condition of the Tabin property in October, 1963.

Richard Manke, a real estate broker, appraiser, builder and land developer doing business in Arlington Heights, was called as a witness for the defendant. He testified that the highest and best use of the Tabin property in October 1963 was residential subdivision, and that in his further opinion the property in October 1963 was worth $1,200,000, based upon a 10,000 minimum square foot lot zoning change by Hoffman Estates. He also testified that there had been no significant increase in the value of property in the vicinity of the Tabin property from October 1963 to March 1965. The witness further stated that he was familiar with the peat problem in the northwest portion of the county and testified of his own knowledge as to building construction on such soil throughout that area.

On cross-examination, Mr. Manke testified extensively concerning soil and drainage conditions of the Tabin property, the location of sewers in the area of the Tabin property, the costs of subdividing a parcel of real estate, and the like.

William Alter, a real estate broker and builder (called by defendant) testified that the highest and best use of the Tabin property in October 1963 was a residential

subdivision and that, based on his professional experience, his opinion of the value of the property at that time was $1,038,000, based upon a minimum one-acre lot zoning. He testified that the costs of developing a parcel of property is considered in arriving at the value of the property.

On cross-examination, the witness further testified as to his qualifications as an expert witness, and also testified as to the general conditions of the Tabin property, the sewer and water facilities in the area of the property, the costs of filling and excavating, and the like.

The final witness who testified for the defendant was a member of the firm of attorneys who represented defendant at the trial below. The witness testified that he made a search of the county land tract books to determine the ownership of the land in the immediate area of the Tabin property, and that in November 1963, approximately 90% of that land had been either acquired by the Forest Preserve District or was then in a pending eminent domain action. In rebuttal, George Wight testified that he is a consulting civil engineer in Barrington. He testified extensively as to the cost which would have been incurred in connection with the development of the Tabin property in accordance with the designs set forth in Defendant's Exhibits 1 and 2, the witness relating an itemized account thereof. On cross-examination, Mr. Wight admitted that there were "contingency amounts" added to the cost of development figures to which he had testified, "for unknown portions of it."

The Forest Preserve District first contends that the trial court erred in allowing the introduction of certain evidence. It is first argued that on the cross-examination of Alan Waldman the defendant was permitted to elicit answers with respect to the witness' association with the real estate firm doing business in the Lawndale area of Chicago, and that that evidence was incompetent

and confused the issue of the valuation of the Tabin property.

Mr. Waldman testified extensively on direct examination as to his experience and qualification as an expert witness in the field of land valuation and appraisal. His association with the real estate firm in question was not related by him during his direct examination, and he was asked on cross-examination whether or not a great deal of his business activity during the previous ten years was devoted to the Lawndale area, which he answered in the negative. The qualifications of the witness were brought out during direct examination and the defendant was properly allowed to question into the additional matter of his association with the real estate firm, as having a bearing on those qualifications. The question is one of credibility, and not competency, and the jury had a right to know the extent of the witness' expert knowledge and experience as to the subject matter of his testimony. Eldorado, M. & S. W. R. Co. v. Everett, 225 Ill 529, 532, 80 NE 281; see also Spohr v. City of Chicago, 206 Ill 441, 444–445, 69 NE 515. When the questioning on cross-examination turned to the physical condition of the buildings in the Lawndale area and the general blighted nature of the area, an objection to the questioning was sustained and the jury was instructed to disregard the question.

It is next argued that the trial court erred in permitting defendant to elicit evidence as to the availability of property in the immediate area around the Tabin property, in that the surrounding property was either owned by or under condemnation proceedings instituted by the Forest Preserve District. The matter of the availability of land in the area of the Tabin property was first brought out by the Forest Preserve District's own witness, Alan Waldman, when on cross-examination he volunteered the evidence that there was a great deal of land available in

the area. Defendant then went into the question of who owned the land in the area of the Tabin property and also of its real availability on the open market. It was then brought out that the Forest Preserve District either owned or had filed condemnation proceedings against a substantial portion of the surrounding property.

■ We feel that the interest of the Forest Preserve District in the land surrounding the Tabin property and the effect which that interest had on the true availability of that land on the open market were elements properly brought before the jury for its consideration in arriving at a valuation of the Tabin property. Pullman Co. v. City of Chicago, 224 Ill 248, 253, 79 NE 572. It should be noted that during the cross-examination of defendant's witness Manke, the Forest Preserve District went into the question of the vacant acreage in the area of the Tabin property. Defendant had a right to place before the jury evidence as to whether the land surrounding the Tabin property, although vacant, was available on the open market.

■ It is next argued that the trial court erred in permitting defendant's witness Holt to testify as to his experience in working with peat in the northwestern portion of the county, without being required to relate that experience to the date of the filing of the condemnation petition in October 1963.

In light of the extensive testimony of the other witnesses, both on direct examination and cross-examination, concerning the construction problems incurred in areas where peat conditions exist, without their having been required to relate that testimony to October 1963, we are of the opinion that the impact on the jury of the Holt testimony on this subject was insignificant. On the contrary, defendant's witness Manke was cross-examined concerning construction of buildings on soil conditions in the area of the Tabin property, without relation to the October 1963 date.

279

The Forest Preserve District cites the case of Department of Public Works and Buildings v. Oberlaender, 92 Ill App2d 174, 235 NE2d 3 (affd, 42 Ill2d 410, 247 NE2d 888) as standing for the proposition that specific changes in conditions on the condemned property, after the date the condemnation action was filed, cannot be considered in arriving at the valuation of the land existing at the time the action was filed. This proposition of law has no bearing on the situation presented here inasmuch as the question before us involves the feasibility of subdividing land where peat conditions are present; a prospective purchaser of the Tabin property for subdivision purposes in October 1963 could have taken the peat problem, and the steps required for its rectification, into consideration in the purchase of the property.

██ ██ The Forest Preserve District further argues that it was error for the trial court to permit defendant to cross-examine its witnesses as to the number of buildable lots on the Tabin property in October 1963. The main thrust of the Forest Preserve District's case is that the Tabin property value was reduced considerably due to the poor soil and drainage conditions of the property. Under its theory of the case, the value of the Tabin property would be largely controlled by the number of lots which could be used on the property. While it is true that sales of subdivided lots may not be introduced to show the value of unsubdivided property, as the cases cited by the Forest Preserve District hold, this has no bearing on the introduction of evidence as to the number of usable lots on the property to show the value of unsubdivided property.

The Forest Preserve District's valuation witnesses testified as to the value of the Tabin property. They based their opinions in that regard primarily on the peat and drainage conditions of the property and the problems which would arise in the development of the property due to those conditions. The trial court did not abuse its dis-

cretion in allowing defendant to inquire into a more detailed explanation as to the bases of those witnesses' opinions as far as the effect the peat and drainage conditions were concerned. Spohr v. City of Chicago, 206 Ill 441, 445, 69 NE 515.

In Forest Preserve Dist. of Cook County v. Eckhoff, 372 Ill 391, 24 NE2d 52, cited by the Forest Preserve District in support of its position, the Supreme Court stated that it was not proper, in an action to condemn unplatted property, to show the value the property may have when subdivided into lots. However, the Eckhoff case involved an attempt to introduce photographs of buildings on property which was in fact subdivided and developed, in locations different from the subject property. The Eckhoff decision, further, was based in this regard upon the case of Forest Preserve Dist. of Cook County v. Chilvers, 344 Ill 573, 577, 176 NE 720, which holds that sales of dissimilar property (such as the actual sales of subdivided lots) to show the value of unsubdivided property is improper. This is clearly not the situation before us.

The Forest Preserve District finally argues that the trial court erred in allowing into evidence Defendant's Exhibits 1 and 2, inasmuch as maps or plats of unsubdivided property cannot be introduced to show the adaptability of the property for such use.

We are of the opinion that the trial court, in its discretion, properly allowed the exhibits into evidence to assist the jury in its determination of the facts, and to aid the jury in understanding the testimony of the witnesses. As stated in the case of Department of Public Works v. Chicago Title & Trust Co., 408 Ill 41, 95 NE2d 903, at page 52:

> "Plats, photographs, drawings and diagrams, which illustrate the subject matter of testimony, may be received into evidence for the purpose of showing a particular situation, explaining the testimony or

enabling the jury to apply the testimony more intelligently to the facts shown. (Smith v. Sanitary Dist. [sic] 260 Ill 453.) All of the data shown by the colored exhibits were matters to be taken into consideration by the jury in a case of this nature. We do not see that they did more than explain testimony of a somewhat technical nature and assist the jury in its determination of the facts. The court did not abuse its discretion in allowing the exhibits into evidence."

The issue below was the fair cash market value of the Tabin property. The highest and best use of the property was conceded by the Forest Preserve District and consequently was not in issue in this case, as it was in the case of Union Elec. Power Co. v. Sauget, 1 Ill2d 125, cited by the Forest Preserve District. The Court in Sauget states that the recordation of a plat of subdivision of farm property (within a month of the filing of a petition to condemn that property) does not mean that the property must thereafter be referred to as subdivided property, and further cannot alter the value of that property nor alter the character of admissible evidence relating to value. The admissibility of the plat there involved was not in issue. It should be further noted that the cases of Sexton v. Union Stock Yard & Transit Co., 200 Ill 244, 65 NE 638, and Martin v. Chicago & M. Elec. R. Co., 220 Ill 97, 77 NE 86, cited by the Forest Preserve District, have been superseded by the case of Department of Public Works and Buildings v. Chicago Title & Trust Co., supra.

The foregoing is dispositive of the remaining matters raised by the Forest Preserve District with respect to Defendant's Exhibits 1 and 2. The witnesses testified extensively and in detail as to the matters raised in this regard and the jury heard that testimony.

The Forest Preserve District next contends that the trial court committed reversible error in refusing to allow

it to introduce certain evidence and to make comments on that evidence during closing argument.

The Forest Preserve District first argues that the court should have allowed its Exhibit 5 into evidence. As noted above, Exhibit 5 was identical to Exhibit 5–A, except that Exhibit 5 was in various colors which depicted the depths and makeup of the soil conditions on the Tabin property. Exhibit 5–A was allowed into evidence, the defendant specifically noting that no objection would be made thereto. However, objection was made to the introduction of Exhibit 5 and the court sustained the objection.

■ The matters contained on Exhibit 5 were cumulative of that contained on Exhibit 5–A. Further, the trial court questioned witness Schlesinger with regard to the soil condition patterns depicted on the exhibits and the witness responded that the patterns were arrived at by him through "judgment interpolation" or an "educated guess" from the borings taken from the property. Under the circumstances, we are of the opinion that the trial court did not abuse its discretion in refusing to allow Exhibit 5 into evidence. Wood v. Prudential Ins. Co. of America, 271 Ill App 103, 110; ILP, Trial, § 48.

■ The Forest Preserve District next contends that the trial court erred in refusing to allow testimony relating to the requirement in the Village of Hoffman Estates that a portion of land in each subdivision be dedicated for public use. The trial court based its ruling upon the authority of the case of Pioneer Trust & Savings Bank v. Village of Mt. Prospect, 22 Ill2d 375, 176 NE2d 799, which holds municipal ordinances requiring the dedication of specific portions of subdivided property for public use are void. The evidence sought to be elicited by the Forest Preserve District in this regard was incompetent.

■ The Forest Preserve District also assigns as error the trial court's refusal to allow cross-examination of

defendant's witnesses concerning the cost required to develop the Tabin property in accordance with Defendant's Exhibits 1 and 2. The cases cited by the Forest Preserve District hold that it is permissible to cross-examine valuation witnesses as to the costs connected with a possible development. (See Forest Preserve Dist. of Cook County v. Krol, 12 Ill2d 139, 145 NE2d 599; Forest Preserve Dist. of Cook County v. Galt, 412 Ill 500, 107 NE2d 682; City of Chicago v. Lehmann, 262 Ill 468, 104 NE 829.)

However, two of defendant's witnesses referred to by the Forest Preserve District were not valuation witnesses. The third, Manke, was a valuation witness and was, in fact, questioned on cross-examination concerning the costs of developing the Tabin property, as was defendant's valuation witness, Alter.

The Forest Preserve District points to two questions asked of Manke on cross-examination, objections to which were sustained. One related to the witness' opinion as to the financial interest or return expected on a developer's investment, and the other related to the cost of selling property. Manke testified that he had 25 years' experience in the field of subdivision development, and that when he valued property, he considered "all costs" and the "total cost of development." We find no abuse of discretion in the trial court's limiting of the Forest Preserve District's cross-examination in this regard especially in view of the extent to which it had been allowed to cross-examine these witnesses generally. See County of Cook v. Colonial Oil Corp., 15 Ill2d 67, 70, 153 NE2d 844.

 The final point raised by the Forest Preserve District is that the cumulative effect of the numerous allegedly erroneous rulings by the trial court deprived it of a fair trial. The Supreme Court has consistently held that in an eminent domain proceeding wherein the evidence as to value is conflicting, where the jury has

viewed the property and returned a verdict within the limits of the testimony, that verdict will not be over-turned unless it appears that it was the result of clear and palpable error or the result of passion or prejudice on the part of the jury, or unless the court's rulings were in error and misled the jury. Union Elec. Power Co. v. Sauget, 1 Ill2d 125, 131, 115 NE2d 246. The jury here viewed the Tabin property, considered the numerous ex-hibits entered into evidence, heard lengthy testimony, observed the witnesses, and fixed the value of the Tabin property within the limits of the testimony. The rulings of the trial court alluded to by the Forest Preserve Dis-trict were not erroneous, and we cannot say that the ver-dict was the result of passion or prejudice or clear and palpable error.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and McCORMICK, J., concur.