THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE CHARLESTON, Defendant-Appellant.

Second District   No. 83—0027

Opinion filed April 26, 1985.

Michael M. Melius, Public Defender, of Waukegan, and Hatchett, DeWalt, Hatchett & Hall, of Pontiac, Michigan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Joe Charleston, was convicted of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1) and sentenced to a term of 28 years' imprisonment. He appeals, contending the trial court erred by: (1) excluding evidence of decedent's propensity for violence; (2) precluding defendant from impeaching a witness; (3) permitting the State to cross-examine an expert witness regarding a testing error he made in another case; and (4) that defendant was not

proved guilty beyond a reasonable doubt.

Shortly after 7 p.m. on November 30, 1981, in the Ace of Clubs tavern located in Waukegan, Kenneth Smith, age 19 years, was killed by a single gunshot wound in the chest. At the time of the shooting the tavern was crowded with about 60 patrons, but descriptions of the occurrence by the witnesses varied to a certain extent.

Michael Smith, a brother of decedent, testified that he was talking to Buford Brown near the back of the tavern; he heard his brother Kenneth shout and saw Kenneth and defendant standing face to face arguing. Kenneth said, "What is you going to do: shoot me, or what?" Defendant reached under his coat and produced a black .38 revolver in his right hand, pointed it at Kenneth and shot him in the chest. Defendant then waved the gun and instructed the crowd not to move, fired a shot in the air and ran out of the door.

Buford Brown testified he heard an argument between decedent and defendant and saw defendant pull a gun from underneath his coat and shoot decedent. On cross-examination, Brown testified he did not believe Michael Smith was present during the incident, but came in later.

Thomas Jenkins testified he came out of the restroom and saw defendant and decedent arguing. Defendant told decedent he had bumped him and asked if decedent was trying to knock him down. Decedent apologized, but defendant said, "I'll blow you away." Defendant dropped the beer he held in his hand and slapped decedent across the face. Defendant then produced a pistol and stuck it in decedent's stomach. Jenkins testified he was frightened and went back into the washroom until it was safe to come out. He heard two shots and came out, seeing that the barroom was then empty except for the body on the floor.

Defendant also testified, stating he was standing at the bar drinking beer when decedent pushed into him, swore at him and said he knew defendant as a man who formerly went with decedent's cousin. The man called defendant names and pulled a gun from under his coat. Defendant testified he grabbed decedent's wrist with both hands and during the struggle the gun went off while still in decedent's hand. He fell and defendant pulled the gun from decedent's hand and shot into the ceiling to back off the crowd. He ran out of the tavern and arrived at the North Chicago police station, two to three miles away, 20 minutes later, where he told officers he had been involved in a shooting and gave a statement. Defendant testified he had the gun when he ran out of the building, but did not know what became of it as he was frightened and nervous. Ownership of the gun was never

established nor was it located.

Jurlene Brown testified defendant was drinking his beer when decedent came up and started an argument threatening defendant's life. Decedent reached for his left side and defendant grabbed his wrist; they struggled and a gun went off. The witness stated she did not actually see the gun in anyone's hand until after the first shot, at which time defendant had it.

Ronnie Garland also testified to the occurrence, stating defendant and decedent had a little argument and decedent made a move with his left hand. Garland then heard a shot, but his view was obstructed and he didn't see the gun until after decedent was shot and defendant was then holding it.

## I

### EXCLUSION OF EVIDENCE OF DECEDENT'S PROPENSITY FOR VIOLENCE

■ Prior to trial, the State moved *in limine* to bar defendant from introducing any evidence of or commenting on decedent's record of arrests, convictions or his reputation in the community. As a basis for the motion, the State noted that defendant in statements to police officers said he did not know the decedent "relative to the reasonableness of his action in defending himself" and cited *People v. Wolski* (1980), 83 Ill. App. 3d 17, 403 N.E.2d 528. At the hearing of the motion, defendant's counsel suggested a theory of self-defense may be offered in trial, that defendant would testify he knew decedent generally in the community, and that "he had quite a series of run-ins with the law, and these led to his propensity for violence and for anti-social conduct." The trial court granted the motion *in limine*, as there was no showing defendant knew the decedent's reputation, and barred mention of it until such time as evidence of defendant's knowledge was produced in trial.

Defendant contends that where evidence of the deceased's propensity for violence and aggression helps corroborate defendant's testimony that decedent was the initial aggressor, defendant's knowledge of that evidence is immaterial and the trial court erred in excluding it. He relies upon *People v. Gossett* (1983), 115 Ill. App. 3d 655, 451 N.E.2d 280, *appeal denied* (1983), 96 Ill. 2d 545, *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 16, 414 N.E.2d 262, and *People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640. The State responds the issue is waived as defendant failed to make an offer of proof as to the victim's prior record of violent behavior and the only suggestion of

such conduct in the record was defendant's attorney's statement decedent had "run-ins with the law."

In *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018, decided after the trial of this case, our supreme court considered the varied opinions of the appellate court on this issue and resolved it. The court determined that evidence of a victim's aggressive and violent character may be offered to support a theory of self-defense in two ways: first, where defendant's knowledge of the victim's violent tendencies may have affected defendant's perception of and reaction to the victim's behavior and second, where evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened. The court noted that while the first basis for such evidence necessarily requires knowledge by defendant of the victim's violent nature, the second basis does not. It held that "when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned of it." *People v. Lynch* (1984), 104 Ill. 2d 194, 200, 470 N.E.2d 1018.

In the present case, however, defendant did not offer a theory of self-defense, nor was the jury so instructed. He argued the shooting was an accident, with the gun being fired while decedent was holding it. In his post-trial motion, defendant emphasized the defense was not self-defense, but was accident. In this court, defendant characterizes the defense as "a hybrid self-defense/accident theory" under which decedent's propensity for violence was relevant, even though defendant was unaware of it, to corroborate his claim decedent acted aggressively and violently, citing *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 15, 414 N.E.2d 262.

Self-defense is an affirmative defense which, if raised by evidence, requires that the State prove defendant's guilt beyond a reasonable doubt as to that issue and all other elements of the offense charged. (See *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290; *People v. Ingram* (1983), 114 Ill. App. 3d 740, 449 N.E.2d 564; Ill. Rev. Stat. 1981, ch. 38, pars. 3—2, 7—1.) The defense is not applicable where defendant asserts the gun discharged accidentally in a struggle. (*People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 893, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448.) Self-defense relates to knowingly and intentionally using force to deter another; for it to be present defendant must have fired the gun intentionally and, where an accident is claimed, self-defense is out of the case. *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703,

717, 377 N.E.2d 1077, *appeal denied* (1978), 71 Ill. 2d 619.

The unspecified evidence of the victim's propensity for violence was properly excluded by the trial court as such evidence, if it existed, may be shown only where defendant has raised the theory of self-defense. (See *People v. Lynch* (1984), 104 Ill. 2d 194, 200, 470 N.E.2d 1018.) Defendant did not do so in this case, and the only apparent purpose served by such information here would be to generally disparage the victim of the offense in the eyes of the jury for defendant's benefit. He may not properly do so.

■ There is a second basis upon which the exclusion of such evidence would be upheld in this case. As we have noted, the suggested propensity for violence of decedent has been described in this record only by defendant's counsel's unsupported assertion the victim had "run-ins with the law." No offer of proof was made describing the nature of those matters, and neither the trial court nor this court on review are offered an opportunity to determine whether such "run-ins" actually demonstrate general aggressive propensities. Compare *People v. Lynch* (1984), 104 Ill. 2d 194, 202-04, 470 N.E.2d 1018.

II

### IMPEACHMENT OF STATE'S WITNESS

■ Defendant contends the trial court also erred by refusing to permit impeachment of Michael Smith with evidence the witness had pleaded guilty to theft and was placed upon six months' supervision in 1980 or 1981. The State objected first on the grounds there is no judgment of conviction entered where supervision is granted and thus no basis for impeachment. In an apparent reference to records of his office, the assistant State's Attorney agreed Smith had been placed on supervision for theft which was terminated unsuccessfully, but neither he nor defendant's counsel knew whether a judgment of conviction had been then entered. The trial court stated that theft was an offense for which the witness could be impeached, but only if a judgment of conviction had been entered. Defendant was prohibited from questioning the witness as to that offense, but was given leave to recall him, presumably in the event evidence of a judgment of conviction was subsequently located. There is no further indication in the record as to the status of the theft offense, nor did defendant recall the witness.

Defendant argues that, as Michael Smith did not successfully complete the term of supervision, he did not then receive the benefits of discharge and dismissal of the theft charge which are incident to su-

pervision (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—3.1(f)) and must be considered to have been convicted of the offense, even though judgment was never entered thereon. Defendant offers no relevant authority in support of this argument.

A "conviction" is defined as a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty. (Ill. Rev. Stat. 1981, ch. 38, par. 2—5.) Only a judgment of conviction may be used for purposes of impeachment and evidence of an arrest, indictment or of the actual commission of an offense may not be so used. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 590-91, 363 N.E.2d 805; *People v. Lashmett* (1984), 126 Ill. App. 3d 340, 345, 467 N.E.2d 356.) Nor is a disposition of court supervision which has been successfully discharged a "conviction" which may be used for purposes of impeachment. (See *People v. Miller* (1981), 101 Ill. App. 3d 55, 427 N.E.2d 987; Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—3.1(f).) In *People v. Lashmett* (1984), 126 Ill. App. 3d 340, 467 N.E.2d 356, it was determined that a verdict of guilty by a jury was not the equivalent of a conviction which contemplates more than a mere finding of guilt. See *People v. Allen* (1978), 71 Ill. 2d 378, 375 N.E.2d 1283; *People ex rel. Grogan v. Lisinski* (1983), 113 Ill. App. 3d 276, 446 N.E.2d 1251.

This court considered a similar question in *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 408 N.E.2d 23, where the State sought to impeach defendant by his plea of guilty to burglary which, in that jurisdiction, was not a conviction under a first-offender statute. We held that it would be improper to introduce for impeachment evidence of a prior proceeding which did not result in a conviction. *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 787, 408 N.E.2d 23; see *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.

It was incumbent upon the defendant in this case to show that, in fact, a judgment of conviction had been entered if the witness failed to successfully complete supervision. (*People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283; *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 458 N.E.2d 504, *appeal denied* (1984), 99 Ill. 2d 531.) Defendant did not do so and the trial court correctly declined to permit impeachment solely by evidence of the witness' plea of guilty to theft.

III

IMPEACHMENT OF EXPERT WITNESS

Defendant asserts the trial court erred when it permitted the

State to cross-examine his expert witness regarding a testing error made by the witness in a prior unrelated case.

A chemist employed by the Lake County coroner was called as an expert witness by defendant and testified decedent's blood alcohol level was .228% and urine .281% at the time of death. Over objection, the State impeached the witness with evidence he once made an error in a prior blood test in another case. Defendant argues it is improper to cross-examine a witness as to irrelevant, immaterial or collateral matters (*People v. McCorry* (1972), 51 Ill. 2d 343, 351-52, 282 N.E.2d 425) and that the evidence was hearsay.

Matters of impeachment are within the trial court's discretion and will be reversed only if abused to defendant's prejudice. (*People v. Schomer* (1978), 64 Ill. App. 3d 440, 444, 381 N.E.2d 62, *appeal denied* (1979), 72 Ill. 2d 584; *People v. Bruce* (1975), 32 Ill. App. 3d 404, 407, 336 N.E.2d 354, *appeal denied* (1976), 61 Ill. 2d 602.) Cross-examination of an expert witness for the purpose of explaining, modifying or discrediting his testimony is proper. (*People v. Conrad* (1967), 81 Ill. App. 2d 34, 47-48, 225 N.E.2d 713, *aff'd* (1968), 41 Ill. 2d 13, 241 N.E.2d 423; see *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170.) This is the rule even though such examination may incidentally raise another matter. (*People v. Poliquin* (1981), 97 Ill. App. 3d 122, 136, 421 N.E.2d 1362, *appeal denied* (1981), 85 Ill. 2d 572.) The jury had a right to know the extent of the witness' expert knowledge and experience; his credentials and past record were relevant. (*Forest Preserve District v. Tabin* (1969), 115 Ill. App. 2d 267, 278, 253 N.E.2d 99; see *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 390 N.E.2d 1214.) Wide latitude should be granted in cross-examination of an expert witness to test his opinion on subjects not of common knowledge. (*People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 799, 382 N.E.2d 1223, *aff'd* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362.) *People v. Rudi* (1981), 94 Ill. App. 3d 856, 419 N.E.2d 646, *appeal denied* (1981), 85 Ill. 2d 572, upon which defendant primarily relies, is inapposite as the objected to cross-examination there went to collateral matters not raised by direct examination.

■ Defendant's further argument that the impeaching evidence was hearsay is waived for failure to object on that ground in trial. (*People v. Baker* (1983), 114 Ill. App. 3d 803, 807, 448 N.E.2d 631.) In any event, testimony offered solely for impeachment is not admitted to establish the truth of the stated facts (*People v. Armstrong* (1961), 22 Ill. 2d 420, 424, 176 N.E.2d 755), and the trial court did not err in permitting this impeachment.

IV

### REASONABLE DOUBT

■ Defendant finally contends that the testimony of the State's witnesses was contradictory and inconsistent, suggesting fabrication, citing *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525. The State agrees there were numerous inconsistencies in the testimony of witnesses called by both it and the defendant, but argues that witnesses do agree on the essential issue that defendant produced a gun and shot decedent.

In cases where evidence has been found insufficient, it has been substantially more confusing, contradictory and less credible than in the present case. (See *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525; *People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531.) A reviewing court may not substitute its judgment for that of the trier of fact as to questions involving weight of the evidence or credibility and will reverse only if the State's evidence was so improbable, impossible or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Hubbard* (1973), 55 Ill. 2d 142, 147, 302 N.E.2d 609; *People v. Winfield* (1983), 113 Ill. App. 3d 818, 828-30, 447 N.E.2d 1029, *appeal denied* (1983), 96 Ill. 2d 549.) A jury verdict based upon credible, substantial evidence is not made reversible because there was other evidence which, if believed, might have resulted in a different verdict. *People v. Kelly* (1956), 8 Ill. 2d 604, 615, 136 N.E.2d 785, *cert. denied* (1957), 353 U.S. 966, 1 L. Ed. 2d 915, 77 S. Ct. 1050.

Repetitions of past events in detail by several witnesses can be expected to generate contradictions and inconsistencies, but that is not necessarily indicative of falsehood. (See *People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161.) Witnesses called by the State here testified defendant drew the gun and shot decedent; defense eyewitnesses conceded on cross-examination they didn't see the gun until after the shooting, when defendant had it. There was sufficient evidence from which the jury could find defendant guilty beyond a reasonable doubt and we will not disturb its judgment. See *People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

HOPF and SCHNAKE, JJ., concur.