2024 IL App (2d) 240440-U
Nos. 2-24-0390 & 2-24-0440, cons.
Order filed December 24, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF S.F., | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellee and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| and | ) | Nos. 20-D-905 |
| | ) | 23-OP-2596 |
| | ) | |
| S.G.S., | ) | |
| | ) | Honorable |
| Respondent-Appellant and | ) | Rhonda K. Bruno, |
| Cross-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1      *Held*: Regarding respondent's appeal, the allocation of parenting time and responsibilities would not be disturbed where respondent failed to establish that the trial court improperly excluded or withheld evidence or that the trial court's ultimate determination was erroneous; respondent's challenge to the dissolution judgment dismissed due to a lack of jurisdiction; regarding petitioner's cross-appeal, allocation judgment remanded for modification to reflect the statutory requirement that a hearing be held prior to any change to the restrictions on respondent's parenting time.

¶ 2      On July 13, 2020, petitioner, S.F., filed a petition for the dissolution of his marriage to respondent, S.G.S.. On July 16, 2024, the trial court entered two orders: a dissolution judgment

and an allocation of parental responsibilities and parenting plan judgment. Respondent filed a notice of appeal and petitioner filed a notice of cross-appeal from those orders. We affirm in part, remand for modification in part, and dismiss in part.

¶ 3                                                I. BACKGROUND

¶ 4        As this case has been pending for over four years, a complete recitation of the facts would be lengthy. We thus limit our recitation to those facts relevant to our disposition of this appeal and include additional facts in the analysis section as needed to address the parties' specific arguments. The parties were married in 2007 and had two children: R.S., born in 2008, and A.S., born in 2017. In July 2020, petitioner filed a petition for dissolution of marriage. In December 2021, the trial court granted respondent's motion to appoint a guardian ad litem (GAL). In September 2022, the trial court appointed Dr. David Finn to conduct an evaluation pursuant to section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604.10(b) (West 2020)).

¶ 5        On October 6, 2022, the parties entered an agreed order providing that respondent would vacate the marital home within five days, petitioner would have exclusive possession of the home, and that the parties would have equal parenting time with A.S., as R.S. was then in residential treatment for mental health issues.

¶ 6        On December 13, 2022, petitioner filed an emergency petition to compel residential treatment, for restricted parenting time with both children, and other relief. Petitioner alleged that R.S., at the direction of respondent, made a false disclosure of sexual abuse against him while she was in residential treatment and respondent then tried to get an order of protection against him. The abuse was reported to the Department of Children and Family Services (DCFS) but determined to be unfounded and the order of protection was denied. Petitioner alleged that

respondent was engaging in a course of conduct to alienate R.S. from petitioner and exclude him from treatment decisions as to R.S..

¶ 7    A hearing on the petition commenced the same day.  The GAL testified that she viewed R.S.'s advocacy center interview where R.S. made allegations of sexual abuse.  The GAL did not believe R.S. was being truthful because she kept saying the same thing over and over and did not provide any details of the alleged abuse.  The GAL also testified that respondent had once asked her what circumstances would warrant supervised visitation and the GAL told her that it was warranted in cases of serious endangerment, such as when a parent is a drug addict or a child molester.  Due to that conversation, the GAL had concerns that the sexual abuse allegations were prompted by respondent as a litigation strategy.

¶ 8    The GAL also testified that a treatment facility, where R.S. was attending a daily outpatient program, reached out to the GAL because respondent told them that petitioner was under a no-contact court order and the facility wanted a copy of the court order.  Once respondent realized that the GAL was having contact with that facility, respondent stopped sending R.S. there for treatment.  After R.S. missed two days of treatment, the GAL sent an email saying that R.S. should resume treatment as there was a previous court order that required the parties to follow the treatment recommended by the professionals and, after missing a third day, R.S. would get kicked out of the program.  R.S. did not show up for the third day and was kicked out of the program. The GAL testified that the decision to take R.S. out of the treatment program was not in R.S.'s best interest.  R.S. had also attended eight different treatment facilities in the last eight months, and had not attended school since May 2022, and these circumstances were also not in her best interest.  The GAL believed that respondent could make better decisions as to what was in the best interest of R.S.

¶ 9    Respondent testified that R.S. was, in terms of parenting time, solely under respondent's care. She stopped sending R.S. to school because she was being bullied. Respondent denied that she stopped sending R.S. to the treatment facility because the facility was communicating with petitioner and the GAL, and denied telling anyone that there was a no-contact order with petitioner. Respondent also denied coaching R.S. into saying that she was sexually abused by petitioner.

¶ 10    Following argument, the trial court found the GAL credible and respondent not credible. Nonetheless, the trial court stated that it was hesitant to remove respondent's parenting time for fear that it would be detrimental to R.S.'s mental stability, which was the utmost concern. The trial court was still deeply concerned about respondent's manipulation, false information, and bad-mouthing of petitioner. The trial court was troubled that R.S. had been in eight different treatment facilities. The trial court believed that respondent was putting her anger and frustration with petitioner ahead of R.S.'s medical needs. The trial court stated that there was reasonable evidence to infer that respondent coached R.S. to make the sexual abuse allegations. The trial court found that respondent did not always act in R.S.'s best interest. The trial court also found that respondent's behavior, interaction, and medical decisions regarding R.S. seriously endangered R.S.'s mental health and emotional development. The trial court granted all medical decision-making responsibility to petitioner.

¶ 11    On November 17, 2023, the parties appeared for status of Dr. Finn's report, which was provided only to the court and counsel, but not directly to the parties. Based on that report, which is not included in the record on appeal, petitioner filed an emergency petition for order of protection and to terminate respondent's parenting time. The trial court admitted Dr. Finn's report into evidence and heard testimony from him. Dr. Finn testified that respondent posed a substantial

and serious danger to the children and that he planned to make a report to DCFS. He summarized his findings as follows:

> "[M]y findings in this case in summary are that [R.S.'s] allegations of sexual abuse are not plausible. That her [allegations] have been influenced if not supported and validated by her mother talking about dreams and God that she had and [R.S.] has been kept in a perpetual state of distress in which her distress is being used as proof of this alleged sexual abuse almost ten years from the time she was four years old with nobody hearing, seeing, experiencing anything related to this sexual or alleged sexual abuse or it even coming up until after an order had been entered allowing for the reunification therapy with her father.

> The allegations were investigated by DCFS. That was the second DCFS report. The allegations were unfounded. There was no police investigation and, again, when I spoke to [R.S.] she told me that the statement from her mother which [R.S.] certainly uses as confirmation that this alleged decade long abuse was occurring."

Dr. Finn further testified that, to a reasonable degree of psychological certainty, R.S. and A.S. were seriously endangered by contact with respondent. He opined that contact with respondent should be limited. Dr. Finn opined that it was in the children's best interests for petitioner to have sole parental and medical decision-making authority. Dr. Finn noted that R.S.'s medical condition had deteriorated over the last year while in the sole care of respondent despite having access to appropriate medical care.

¶ 12 Dr. Finn further testified that he had concerns about A.S., because A.S. was also starting to make sexualized references related to time with petitioner and respondent had made reference

to A.S. taking naked showers with petitioner. When asked to discuss his opinion as to respondent and Munchausen syndrome by proxy (MSBP), Dr. Finn stated:

"So [respondent] has contributed to this constellation of symptoms with [R.S.] without any basis. And in doing so, you know, really has kind of, you know, placed this illness on [R.S.] that [R.S.] does not have. I believe that there is some secondary gain for [respondent].

I think it has to do with her anger at [petitioner]. I think it has to do with her possibly feeling more confident that she's the only person who could take care of [R.S.]. That contributes to the problem because [R.S.] has to be sick in order for [respondent] to have somebody to take care of, which I think is the reason that it's unlike people who are truly traumatized who figure out how to best deal with that trauma and move on.

[R.S.] is kept in this perpetual state of illness, again, without any clear basis for her being ill other than, you know, these kind of, you know, vague statements about dad being an alcoholic, dad being a narcissist, so the allegations did not start with sexual abuse. They raised to a level of sexual abuse whether coincidentally or not after the Court entered an order for [R.S.] and [A.S.] to begin [reunification therapy]."

¶ 13    Respondent testified that she did not coach R.S. into making a false claim of sexual abuse and denied telling R.S. that she had dreams about R.S.'s sexual abuse. She also disagreed with Dr. Finn's testimony that R.S.'s mental health was declining.

¶ 14    Following argument, the trial court entered a lengthy oral ruling and a subsequent written order. The trial court found that respondent engaged in conduct that seriously endangered the children's physical, moral, and emotional health and negatively impacted their emotional development. The trial court granted petitioner all parenting time and sole decision-making

authority for the children. The parties' attorneys were prohibited from disseminating Dr. Finn's report to their clients—it was limited to court, counsel, and to treatment providers if deemed necessary by the GAL. The trial court allowed respondent to send the children short cards or letters, which were to be sent to the children's therapist for review and delivery if the letters were appropriate. Based on Dr. Finn's recommendation, the trial court required respondent to enroll in therapy with Dr. Chinni Chilamkurti (Dr. Chinni) for a minimum of 26 sessions after which respondent "would submit to a limited scope update of Dr. Finn's evaluation to determine if any type of parenting time, beginning with therapeutic reunification, is recommended as being in the best interest of the children."

¶ 15 The trial court also granted petitioner's emergency petition for order of protection and subsequently entered a two-year plenary order of protection. Respondent filed a notice of appeal from the two-year plenary order of protection, which was docketed in this court as case No. 2-24-0390.

¶ 16 On January 23, 2024, the parties entered an agreed order providing that any documents produced by Dr. Finn pursuant to a subpoena would be given to the GAL and then disseminated by her pursuant to court order; the documents were not to be shared with the parties or the children. On February 13, 2024, respondent filed a motion to compel Dr. Finn to comply with her subpoena. She argued that she needed the requested documentation for her own expert, Dr. Jack Joseph, and without it she was prejudiced in preparing her case.

¶ 17 On March 19, 2024, discovery closed pursuant to a May 2023 order setting that as the date as the deadline. On that same date, the trial court granted the motion to withdraw of respondent's sixth attorney but admonished the parties that the trial date, set almost a year earlier as May 13, 2024, would not be changed.

¶ 18    Thereafter, a seventh attorney filed an appearance on behalf of respondent. Respondent filed a motion to continue trial, to compel Dr. Finn to comply with her subpoenas, and for the appointment of Dr. Joseph to perform a parenting evaluation pursuant to section 604.10(c) of the Act (*id.* § 604.10(c)). She also filed a motion to reopen discovery and for leave to issue subpoenas to all the children's various mental health professionals who were treating them. She also filed leave of court to cross-examine Dr. Finn about a section 604.10(b) report Dr. Finn wrote in an unrelated case, alleging that, under similar facts where there were false allegations of sexual abuse, Dr. Finn recommended that the parties have joint parenting.

¶ 19    Respondent's motions were argued at a hearing on April 24, 2024. A transcript of the hearing is not included in the record on appeal. In a written order, the trial court denied the motions. The trial court noted that respondent was responsible for many delays in this case—Dr. Finn's report was delayed due to the voluminous information provided by respondent and respondent caused delays by repeatedly changing attorneys during the case. The trial court observed that respondent had not started the therapy required by the November 2023 order that would allow her to seek some level of parenting time, which showed that respondent will not adhere to court orders that are in the best interest of the children. The trial court also noted that the GAL stated that: R.S. was doing well with petitioner; for the first time in a year and a half R.S. was not in a hospitalization program but was attending school and seeing a therapist once a week; and that it was not in the children's best interest to participate in another 604.10 evaluation. The trial court granted respondent's motion to allow cross-examination of Dr. Finn with a 604.10(b) evaluation he did in another case, as long as any identifying information was redacted. The trial court denied the motions to continue trial, extend discovery deadlines, subpoena mental health professionals, and appoint a 604.10(c) evaluator on the basis that it was not in the best interest of

the children because they needed finality regarding school and parenting schedules. The trial court found that respondent's failure to attend therapy to regain parenting time, and her desire to subject them to more 604.10 interviews, showed "a complete lack of interest in [the children's] welfare."

¶ 20   At the end of April, respondent filed more motions, which the trial court denied. As relevant here, the trial court denied respondent's motion for leave to amend her Rule 213(f) disclosures, "as coming eight days prior to trial and no previous disclosure of said witness, including [Rule] 213(f)(3) witness, Dr. Joseph, who has been known to [respondent] since January 2024 and not disclosed. The deadlines for [respondent's] witness disclosures have passed."

¶ 21   Three days before trial, respondent filed a motion alleging that some of the mental health and school professionals she subpoenaed for trial stated that they would not appear, and requesting leave for them to appear and testify at trial. The trial court denied the motion, explaining that "neither R.S. or [petitioner] will execute releases," that the subpoenas did not conform "with the requirements of 740 ILCS 10/110 in form and language," and were not "accompanied by a court order permitting testimony." The trial court also denied respondent's request for R.S. to testify at trial, finding that it would be "seriously detrimental to the mental and psychological health of the minor child."

¶ 22   A trial on the petition for dissolution was held over seven days beginning on May 13, 2024, and ending with closing argument on June 4, 2024. On July 16, 2024, the trial court entered a 15-page judgment for dissolution and a 36-page judgment addressing the allocation of parental responsibilities and a parenting plan. In the dissolution judgment, the trial court addressed property distribution, child support, childcare costs and expenses, health insurance, and contribution to attorney fees.

¶ 23    In the allocation judgment, the trial noted that it heard testimony from the parties, the GAL, Dr. Finn, James Jones of DCFS, and various other witnesses called by both sides. The trial court essentially found the GAL, Jones, petitioner, and Dr. Finn to be credible, and that respondent was not credible. The trial court also noted that, after trial but prior to its ruling, respondent's attorney withdrew and respondent filed an appearance *pro se*.

¶ 24    The trial court found that respondent had coached R.S. to make the allegations of sexual abuse that started in September 2022. The trial court noted that Jones testified that he told the GAL that he believed respondent was coaching R.S. to make the sexual abuse allegations. The GAL testified that a treatment provider, from one of the partial hospitalization programs attended by R.S., also felt respondent was coaching R.S. to make the allegations. The GAL also testified that she believed respondent schemed up the allegation of sexual abuse after a conversation where respondent asked her what would be necessary for petitioner to only be allowed supervised visits. The GAL did not believe the sexual abuse allegations because R.S. stated that the rape happened millions of times, including times when she had no contact with petitioner and was exclusively with respondent, and because R.S. was unable to explain what rape means. Dr. Finn also testified that he did not believe the abuse occurred.

¶ 25    The trial court noted that in September 2022, after it entered an order requiring reunification therapy between R.S. and petitioner, R.S. attempted suicide and was hospitalized. The trial court outlined the series of residential treatment programs and partial hospitalization programs that R.S. participated in from September 2022 until January 2024. The trial court noted that a letter from one of R.S.'s most recent therapists, who treated R.S. weekly, indicated that R.S. had not reported any physical, sexual, emotional or mental abuse since moving in with petitioner.

¶ 26    Parenting time was allocated entirely to petitioner, pending respondent's compliance with the November 2023 order to attend 26 therapy sessions with Dr. Chinni.  The trial court noted that respondent testified at trial that she would not attend therapy with Dr. Chinni because she does not have MSBP.  The trial court found that parenting restrictions were necessary, stating that:

"Dr. Finn testified that [respondent] fit the criteria *** for [MSBP] by keeping R.S. in a perpetual state of illness when there was no empirical evidence to support the allegations of sexual abuse.  Dr. Finn discussed in detail, in his 33-page report, how [respondent] seriously endangered both children, encouraging R.S. to believe she had been sexually abused, keeping her in perpetual distress and by bribing A.S. with toys and telling him to be careful around his father, not keep secrets from [respondent] and R.S. and telling A.S. he 'would go to hell' if he went to India [with petitioner].  Dr. Finn testified that [respondent] made R.S. watch videos, for hours, of [petitioner] drinking in the basement of the marital home and telling R.S. [petitioner] was an alcoholic."

The trial court also stated that respondent "repeatedly made poor decisions regarding R.S.'s care, including lying to [one treatment facility] that [petitioner] had a no contact order in place."  The trial court concluded that respondent continued to seriously endanger both children's emotional well-being and should not have any decision-making responsibilities of any kind.  The trial court stated that respondent "shall have no parenting time of any kind until she complies with the [trial court's November 2023 order] which requires her to attend 26 sessions with Dr. Chinni.  Once she has done so, the parties may agree on a parenting schedule or return to Court."  The trial court set forth a parenting schedule to take effect when respondent's parenting time resumed.

¶ 27    Respondent filed a timely notice of appeal from this order and petitioner filed a timely notice of cross-appeal.  This appeal was docketed in this court as appeal No. 2-24-0440.  On August

27, 2024, this court granted respondent's *pro se* motion to consolidate this case with appeal No. 2-24-0390 and ordered that appeal No. 2-24-0440 would be the lead case.

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, respondent argues that, with respect to the dissolution judgment, the trial court erred in setting child support. With respect to the allocation judgment, respondent argues that the trial court erred in barring relevant evidence, withholding evidence, relying on an improper diagnosis of MSBP, and in setting parenting restrictions. On cross-appeal, petitioner argues that, in the allocation judgment, the trial court erred to the extent that it did not require a hearing prior to respondent resuming parenting time.

¶ 30                                    A. Jurisdiction

¶ 31    "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." (Internal quotation marks omitted.) *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008). Under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016):

>    "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."

"[A] 'claim' is any right, liability or matter raised in an action." *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990). "Absent a Rule 304(a) finding, a final order

disposing of fewer than all of the claims is not an appealable order and does not become appealable until all of the claims have been resolved." *Gutman*, 232 Ill. 2d at 151. There are limited exceptions to this rule. See Ill. S. Ct. R. 304 (b) (eff. Mar. 8, 2016) (allowing for the appeal of certain specified judgments without 304(a) findings). As relevant here, Rule 304(b)(6) allows for the immediate appeal from any "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act [citation] or Illinois Parentage Act of 2015 [citation]." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016).

¶ 32    In the present case, at the time the parties filed their notices of appeal, various petitions and a motion remained pending. These matters were outlined in an order dated July 23, 2024. Specifically, on July 12, 2024, respondent filed numerous petitions for rule to show cause and a motion to amend errors on financial calculations and documents. On July 3, 2024, petitioner filed a petition for rule to show cause regarding temporary child support and respondent filed a motion to dismiss that petition. In addition, there were three petitions for attorney fees and costs filed by various counsel that had represented respondent. The July 23 order set these petitions and motion for hearing in September 2024, but there is no indication in the record that the trial court ever ruled on these matters.

¶ 33    As these matters remain unresolved, the July 2024 dissolution judgment does not constitute a final, appealable order until the outstanding issues are decided or the trial court issues a Rule 304(a) finding. See *Gutman*, 232 Ill. 2d at 151. We thus lack jurisdiction to address the sole issue raised on appeal that pertains to the dissolution judgment—respondent's contention that the trial court erred in its child support determination. However, under Rule 304(b)(6), the July 2024 allocation of parental responsibilities and parenting plan judgment is immediately appealable

without the need for a Rule 304(a) finding. Accordingly, we have jurisdiction to address the other arguments raised by respondent on appeal, as well as the issue presented in petitioner's cross-appeal, all of which challenge the allocation judgment.

¶ 34                              B. Respondent's Appeal

¶ 35                              1. Evidentiary Rulings

¶ 36    Respondent's first contention on appeal is that the trial court erred in barring relevant evidence. Specifically, she contends that the trial court erred in not allowing her expert witness, Dr. Joseph, to testify; wrongly quashing her subpoena for several of R.S.'s treating therapists; limiting her cross-examination of Dr. Finn; and excluding relevant medical records. The trial court's evidentiary rulings are reviewed for an abuse of discretion. *In re Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 32. Abuse of discretion is the most deferential standard of review, next to no review at all. *People v. Weeks*, 2011 IL App (1st) 100395, ¶ 30. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would agree with the position taken by the trial court. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38.

¶ 37                              a. Dr. Joseph

¶ 38    Respondent argues that the trial court erred in denying her April 2024 motion to amend her Rule 213(f) witness disclosures (see Ill. S. Ct. Rule 213(f) (eff. Jan. 1, 2018)) and thus barring testimony from her expert witness, Dr. Joseph. Supreme Court Rule 213 requires a party—upon request—to identify their witnesses at trial and provide information about the witness's anticipated testimony. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018). Rule 219(c) authorizes a trial court to prescribe sanctions, including barring witnesses and exhibits, when a party fails to comply with the trial court's orders regarding discovery. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). That determination is

guided by consideration of six factors. These are: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110 (2004) (referred to as the *Sullivan* factors). "No single factor is determinative, as each case presents a unique factual situation which must be taken into consideration when determining whether a particular sanction is proper." *Li Jun Huang as Next Friend of Zhaung v. Uribe*, 2020 IL App (1st) 192037, ¶ 44.

¶ 39    Respondent acknowledges that Dr. Joseph was precluded from testifying because she did not make a timely disclosure of him as an expert witness, but argues that the application of the six *Sullivan* factors compel the conclusion that the trial court erred in excluding Dr. Joseph's testimony. We disagree. The trial court found that respondent hired Dr. Joseph in January 2024, yet did not move to disclose him as an expert witness until four months later, which was a month after discovery closed and about two weeks before trial started—a trial date that had been set a year prior. The trial court also found that allowing such a late disclosure would be prejudicial to petitioner as he would have insufficient time to prepare for Dr. Joseph's testimony. Additionally, the trial court noted that Dr. Joseph's testimony would have limited value because, while he did review Dr. Finn's report, he did not speak to petitioner or the children. The record demonstrates that the trial court gave thoughtful consideration to respondent's request for a late witness disclosure and we cannot say its determination was an abuse of discretion. *Miller*, 2015 IL App (2d) 140530, ¶ 32.

¶ 40    Respondent argues that the first *Sullivan* factor weighs in her favor because there was no surprise to petitioner as opposing counsel knew of her intention to call Dr. Joseph as an expert witness since January 2024, because of a written motion she filed. However, the portion of the

record cited by respondent relates to a different witness she moved to disclose late—her therapist, Dr. Kohut. Respondent also does not provide a citation to the record for her written motion. The written motion respondent refers to could be her December 2023 motion to release Dr. Finn's report, wherein she stated that she had the right to call an expert, or her February 13, 2024, motion to compel Dr. Finn to comply with her subpoena, wherein she stated that she needed the requested documentation for her own expert, Dr. Joseph. However, the statements buried in these motions cannot serve as a Rule 213(f) witness disclosure, which required her to identify the subject matter of the testimony, the expert's conclusions and opinions along with their supporting bases, the expert's qualifications, and any reports prepared by the expert regarding the case. See Ill. S. Ct. Rule 213(f)(3).

¶ 41 Respondent also argues that the third *Sullivan* factor weighs in her favor because Dr. Joseph could have testified that she did not have MSBP. This argument is unpersuasive as the trial court's allocation judgment was not based on a diagnosis of MSBP. Rather, it was based on a finding that respondent engaged in behavior that seriously endangered the children's emotional and physical well-being, such as perpetuating false claims of sexual abuse against petitioner, trying to damage the relationship between petitioner and the children, and making poor decisions as to R.S.'s healthcare. Accordingly, even if Dr. Joseph was able to testify that respondent did not suffer from MSBP, the third *Sullivan* factor would still not weigh in her favor.

¶ 42 Respondent contends that the fourth *Sullivan* factor, diligence of the adverse party, weighs in her favor because Dr. Finn did not provide the necessary information for Dr. Joseph to complete his evaluation and render a report. However, as noted by the trial court, Dr. Finn's compliance with subpoenas, and Dr. Joseph's alleged inability to complete a report, does not provide a reason for respondent's failure to timely disclose Dr. Joseph as an expert witness. Respondent has thus

failed to establish any error in the trial court's order barring her late disclosure of Dr. Joseph as an expert witness.

¶ 43    Respondent argues that *Besco v. Henslee, Monek, & Henslee*, 297 Ill. App. 3d 778 (1998), supports a conclusion that the trial court erred in barring Dr. Joseph's testimony. That case is distinguishable from the present case on its facts. In *Besco*, both parties were responsible for numerous delays in the discovery process, no trial date had been set, the parties were in the early stages of discovery, and the expert testimony at issue was critical to the case. *Id.* at 783. Here, the trial date had been set a year prior, respondent was solely responsible for not disclosing Dr. Joseph sooner, and Dr. Joseph's testimony would have limited value because he never spoke to petitioner or the children.

¶ 44                    b. Mental Health and School-Related Professionals

¶ 45    Respondent's next contention is that the trial court erred in quashing her subpoenas for several therapists and school related professionals to testify at trial. Respondent contends that these professionals could have undermined Dr. Finn's testimony and argues that the trial court's reason for quashing the subpoenas—that R.S.'s mental health was not at issue—was error. Respondent fails to cite the pages of the record that identify the subpoenas she is arguing about or the trial court's alleged order quashing those subpoenas. Further, she fails to cite any authority to support her contention that R.S.'s mental health was at issue. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to contain argument supported by citations of relevant authority and the pages of the record relied on. Failure to provide such citations in support of an argument forfeits the argument for review. *In re Estate of Feinberg*, 2014 IL App (1st) 112219, ¶ 29 (argument forfeited for failure to cite relevant pages in the record);

*Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (argument forfeited for failure to cite relevant authority). Accordingly, this argument is forfeited.

¶ 46     Even absent forfeiture, respondent's argument is without merit. The record indicates that, on May 10, 2024, after the professionals refused to comply with the subpoenas, respondent filed a motion for the court to compel her subpoenaed professionals to testify at trial. The trial court denied that motion because the subpoenas were not in compliance with section 10 of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/10 (West 2022)), which required that certain language be included in the subpoenas, and that the subpoenas include either a court order authorizing the subpoena or written consent of the person whose records were being sought. The trial court explained that the subpoenas did not have the requisite language, did not include a court order, and that R.S. and petitioner refused to sign the required releases. As such, her subpoenas were not quashed; instead, they were found to be legally improper.

¶ 47                    c. Limiting Cross-Examination of Dr. Finn

¶ 48     Respondent next argues that the trial court erred in not allowing her to cross-examine Dr. Finn as to a section 604.10(b) report he authored in another unrelated case. Respondent has failed to provide citation to the relevant pages of the record in support of her argument and it is thus forfeited. *Feinberg*, 2014 IL App (1st) 112219, ¶ 29. We would also find the argument forfeited because respondent failed to cite any relevant authority. *Kic*, 2011 IL App (1st) 100622, ¶ 23. Where an appellant has failed to support his or her arguments with citations to authority, this court will not research the issues on the appellant's behalf. See *id.* (noting that this court is not a depository in which the appellant may dump the burden of argument and research). Here, at trial on May 15, 2024, the trial court asked respondent whether she could provide any authority to support the use and disclosure of Dr. Finn's report in another unrelated case in light of the

requirement of section 604.10(b) (750 ILCS 5/604.10(b) (West 2022)) that such reports be limited to the court and the attorneys in the particular case for which such a report is written. Respondent did not provide any authority for that proposition at trial or on appeal.

¶ 49     The only authority respondent cites on appeal is for the proposition that an expert witness is subject to cross-examination to discredit his testimony even if "such examination must incidentally raise another matter." See *People v. Charleston*, 132 Ill. App. 3d 769, 776 (1985). That case involved cross-examination of an expert witness regarding a testing error made in a prior unrelated case. *Id.* However, that case also points out that matters of impeachment are within the trial court's discretion. *Id.* Here, the trial court's decision to bar cross-examination related to Dr. Finn's examination and conclusions in an unrelated case was not an abuse of discretion. At issue in this case was the best interests of the children and our supreme court has stated that "[a] determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988). Accordingly, conclusions Dr. Finn reached in another unrelated custody case, with its own unique circumstances, are not applicable in the present case and respondent has thus failed to establish an abuse of discretion.

¶ 50     In so ruling, respondent argues a finding of error is supported by the fact that the trial court, prior to trial, indicated that the use of Dr. Finn's report from a different case would be allowed. However, it is well settled that a trial court has the power to change its interlocutory rulings. *People v. Walton*, 2024 IL App (4th) 240541, ¶ 31.

¶ 51                                    d. Medical Records

¶ 52     Respondent argues that the trial court erred in excluding medical records that could have demonstrated that R.S.'s mental health problems were the result of being bullied at school and not

because of respondent's influence or behavior. The pages of the record cited show that the trial court excluded the subject medical records because respondent did not have a medical professional that could provide testimony about the meaning of the medical records and the trial court would not allow respondent, as a lay person and not a medical professional, to testify as to the meaning of the medical records. Respondent has failed to city any authority or develop any argument to show that this ruling was an abuse of discretion and the argument is thus forfeited. *Kic*, 2011 IL App (1st) 100622, ¶ 23.

¶ 53                    2. Reliance on Improper Diagnosis

¶ 54    Respondent next argues that the trial court erred in relying on Dr. Finn's opinion that respondent suffered from MSBP and that this error was the reason for the trial court's requirement that she attend 26 therapy sessions prior to resuming parental visitation. The record refutes this contention. Dr. Finn did not medically diagnose respondent with MSBP. Rather, he testified that respondent's behaviors were merely consistent with that disorder. When asked whether he would diagnose respondent with that disorder, he responded only: "If I was diagnosing I would." He also testified that the reason for noting the possibility of MSBP was only to provide a possible explanation for respondent's behavior with respect to her parenting decisions.

¶ 55    Moreover, even assuming, for the sake of argument, that Dr. Finn did diagnose respondent with MSBP, the record shows that the trial court's parenting allocation was not based on that diagnosis. Rather, it was based on respondent's harmful behavior, which included damaging petitioner's relationship with the children, perpetuating false allegations of sexual abuse and alcoholism, and making poor decisions regarding R.S.'s health care. Further, the trial court found that respondent seriously endangered her children in December 2022, which was a year before Dr.

Finn even issued his report. The record demonstrates that the requirement for respondent to attend therapy prior to resuming parenting time was not based on a diagnosis of MSBP.

¶ 56                                    3. Withholding of Evidence

¶ 57    Respondent's next contention is that the trial court erred in not allowing her to view Dr. Finn's report after trial when her attorney withdrew and she filed a *pro se* appearance. This argument is without merit. The record shows that Dr. Finn's report was only distributed to the court and counsel based on the requirements of section 604.10(b) of the Act (750 ILCS 5/604.10(b) (West 2022)) (requiring evaluator to send written report to parties' counsel and to the court), and on Dr. Finn's recommendation that, to protect the safety of the children, it not be distributed to the parties. In July 2024, after the trial court granted respondent's counsel's motion to withdraw and respondent filed a *pro se* appearance, respondent filed a motion to obtain a copy of Dr. Finn's report because, as she was representing herself, she argued she was entitled to see it. In her appellant brief, respondent states that her motion was "to no avail." However, there is no indication in the record that the trial court ever ruled on that motion. Where a party fails to request a ruling on a motion, it is presumed that the motion was abandoned. *Jackson v. Alvarez*, 358 Ill. App. 3d 555, 563 (2005). A party cannot appeal an issue raised by motion where the motion was not ruled upon. See *People v. Hall*, 114 Ill. 2d 376, 414 (1986) ("Because the defendant did not obtain a ruling on the question, he cannot now complain that the court erred."). Moreover, to the extent that there was a ruling on the motion and respondent has simply failed to cite the relevant portion of the record, or include the ruling on the motion in the record on appeal, the argument is forfeited. *Feinberg*, 2014 IL App (1st) 112219, ¶ 29 (failure to cite to the record forfeits an issue); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984) ("From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether

there was the error claimed by the appellant.") Accordingly, the present issue is either not appealable or forfeited.

¶ 58                                4. Parental Allocation

¶ 59    Respondent's final contention on appeal is that the trial court erred in restricting her parenting time and parental responsibilities. Under the Act, the trial court must consider the children's best interests in allocating parenting time and parental responsibilities. 750 ILCS 5/602.5, 602.7 (West 2022). Section 603.10 governs restrictions on parenting time. *Id.* § 603.10. Restricting parenting time under section 603.10 is a two-step process. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 58. First, the trial court must make a factual determination that the preponderance of the evidence demonstrates that the parent's conduct seriously endangered the child's mental, moral, or physical health or significantly impaired the child's emotional development. *Id.*; 750 ILCS 5/603.10(a) (West 2020). On appeal, we consider whether the court's finding of serious endangerment is against the manifest weight of the evidence. *Mayes*, 2018 IL App (4th) 180149, ¶ 59. A decision is against the manifest weight of the evidence when, upon review of the entire record, the opposite conclusion is clearly evident. *Id.*

¶ 60    Next, if the trial court finds that a parent's conduct seriously endangered his or her child, then the court must determine what restrictions are necessary to protect the child. *Mayes*, 2018 IL App (4th) 180149, ¶ 58; 750 ILCS 5/603.10(a) (West 2020). Among other restrictions, the court may order "a reduction, elimination, or other adjustment of the parent's decision-making responsibilities or parenting time, or both"; may "[restrain] a parent's communication with or proximity to the other parent or the child"; and may "[require] a parent to complete a treatment program." 750 ILCS 5/603.10(a)(1), (4), (8) (West 2020).

¶ 61    We review the trial court's determination that certain restrictions are necessary for an abuse of discretion. *Mayes*, 2018 IL App (4th) 180149, ¶ 61. A trial court abuses its discretion when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18. Decisions adjudicating parenting issues are entitled to a "strong and compelling presumption" in favor of validity "because [the trial court] is in a superior position to evaluate the evidence and determine the best interests of the child." *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25.

¶ 62    In the present case, we cannot say that the trial court's finding of serious endangerment was against the manifest weight of the evidence. Petitioner filed for dissolution in 2020 and the record shows that the parties continued to live in dysfunction under one roof for quite a period of time. Two years later, R.S. started to have mental health issues and shortly thereafter made false allegations of sexual abuse against petitioner. The trial court found credible evidence from the GAL, DCFS investigator, and Dr. Finn that respondent had perpetuated R.S.'s false allegations of sexual abuse against petitioner. Dr. Finn also testified that respondent was beginning to perpetuate false allegations of a sexual nature from A.S. against petitioner. The record also shows that respondent told the children lies about petitioner, lied to R.S.'s treatment providers, and made decisions regarding R.S.'s healthcare that were not in R.S.'s best interest. Dr. Finn noted that, despite receiving appropriate medical treatment, R.S.'s condition continued to deteriorate while in respondent's care. However, since the children were placed in the sole care of petitioner, the evidence indicates that R.S.'s condition was improving, she was attending school and weekly therapy, and she had not been hospitalized.

¶ 63    Additionally, we cannot say that the parenting restrictions imposed on respondent were an abuse of discretion.  The restrictions placed on respondent's parenting time are appropriate restrictions under the plain language of section 603.10 of the Act (750 ILCS 5/603.10(a)(1), (4), (8) (West 2022)), which allows for an elimination of parenting time and decision-making responsibilities, restricting communication, and requiring a parent to complete a treatment program such as attending therapy.  Section 603.10 also allows for any other restrictions that protect the safety and welfare of the child, such as limiting respondent's access to the children's medical information.  See *id.* § 603.10(a)(9).  These restrictions were supported by the testimony of the GAL and Dr. Finn.

¶ 64    Respondent argues that the trial court abused its discretion in finding petitioner's testimony credible, and in finding R.S. credible when she made statements adverse to respondent but incredible when she made statements against petitioner.  The trial court is in the best position to evaluate the conduct and demeanor of the witnesses.  *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35.  We give great deference to the trial court's credibility determinations, and we will not substitute our judgment for that of the trial court.  *Id.*; see also *In re Estate of Lambrecht*, 375 Ill. App. 3d 865, 871 (2007) (the trier of fact is in a position superior to a court of review to observe the demeanor of the witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive).  Here, upon our own review of the record, we hold that there is no reason to depart from the trial court's credibility determinations.  Further, the testimony of Dr. Finn and the GAL supported the trial court's conclusion that R.S.'s allegations, that she was sexually abused by her father, were untrue and were instead the result of respondent's manipulation of her impressionable young child.

¶ 65    Respondent also asserts that there was no evidence to support a determination that her behavior seriously endangered R.S.'s mental health because the evidence showed that R.S. was receiving mental health treatment before the issue of sexual abuse was ever mentioned and that R.S. was being bullied at school.  This argument is without merit.  The petition for dissolution was filed in 2020 and R.S.'s mental health issues first appeared in 2021.  Dr. Finn testified that he was aware that there was some reference to R.S. being bullied at school.  However, he opined that, based on his evaluation, R.S.'s distress was due to the divorce, the parties contentious relationship, and respondent's conduct in perpetuating false claims of sexual abuse and alcoholism and in alienating the children from petitioner.  Based on the testimony of Dr. Finn and the GAL, there was sufficient evidence to support the trial court's determination that respondent's conduct seriously endangered R.S.'s mental and emotional well-being.

¶ 66    Finally, respondent argues that the trial court abused its discretion in requiring her to attend 26 therapy sessions with Dr. Chinni and never explained why a different therapist could not satisfy the court.  Respondent notes that even the GAL recommended that respondent see Dr. Chinni "or someone who has been approved and has the same qualifications as a Dr. Chinni."  Respondent states that she should be allowed to resume parenting time as she has been in weekly therapy with her own therapist for three years.  In so arguing, respondent fails to cite any authority for the proposition that the trial court erred in requiring her to see a specific therapist and the argument is thus forfeited.  *Kic*, 2011 IL App (1st) 100622, ¶ 23.  Forfeiture aside, the trial court's order for respondent to attend therapy sessions with Dr. Chinni was entered in November 2023.  Since that time, respondent has not attended the therapy sessions and never moved to amend that order or request that the trial court identify a different therapist.  As noted above, section 603.10(a)(8) states

that the trial court may require a parent to complete a treatment program. 750 ILCS 5/603.10(a)(8) (West 2022). Thus, respondent has failed to establish an abuse of discretion.

¶ 67                                    C.  Petitioner's Cross-Appeal

¶ 68    On cross-appeal, petitioner argues that paragraph 2.5 of the allocation judgment must be modified to conform to the requirements of section 603.10(b) of the Act. Paragraph 2.5 of the allocation judgment states that:

> "Beginning the summer of 2025, and assuming [respondent] complies with the Court's November 17, 2023[,] order and her parenting time has resumed, each parent shall have three (3) weeks of vacation parenting time. If [respondent] has not complied with the Court's November 17, 2023[,] order, she shall not have any summer vacation or parenting time."

Section 603.10(b) of the Act provides, in relevant part:

> "The court may modify an order restricting parental responsibilities if, after a hearing, the court finds by a preponderance of the evidence that a modification is in the child's best interests based on (i) a change of circumstances that occurred after the entry of an order restricting parental responsibilities; or (ii) conduct of which the court was previously unaware that seriously endangers the child." *Id.*

Petitioner argues that, even if respondent completes the required therapy sessions set forth in the November 2023 order, the Act requires the trial court to hold a hearing before respondent can resume her visitation.

¶ 69    To address petitioner's argument, we must engage in statutory construction. The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56. The most reliable indicator

of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *Id.* Statutory construction is a question of law, subject to *de novo* review. *In re Marriage of Harms & Parker*, 2018 IL App (5th) 160472, ¶ 24.

¶ 70    Under the plain language of section 603.10(b) of the Act, the trial court must hold a hearing before it may modify an order restricting parental responsibilities. In this case, the November 2023 order and the July 2024 allocation judgment clearly restricted respondent's parenting time. The trial court's November 17, 2023, order requiring respondent to attend therapy, stated that "[a]fter a minimum of 26 sessions with Dr. Chinni, Respondent should submit to a limited scope update of Dr. Finn's evaluation to determine if any type of parenting time, beginning with therapeutic reunification, is recommended as being in the best interest of the children." This order clearly contemplated further proceedings after the 26 therapy sessions were completed and did not allow visitation to resume automatically.

¶ 71    However, the allocation judgment did not necessarily contemplate further proceedings. While petitioner relies on paragraph 2.5, we will utilize paragraph 2.1 to demonstrate the point. In paragraph 2.1 of the allocation judgment, the trial court stated that respondent "shall have no parenting time of any kind until she complies with the Court's November 17, 2023[,] order *** which requires her to attend 26 sessions with Dr. Chinni. Once she has done so, the parties may agree on a parenting schedule or return to Court." This language allows the parties to reach an agreement for respondent's parenting time to resume. This conflicts with the requirement of section 603.10(b) that, before parental restrictions can be modified, a hearing must be held. 750 ILCS 5/603.10(b) (West 2020); see also *In re E.F.*, 2014 IL App (3d) 130814, ¶ 45 (trial court must comply with statutory hearing requirements). Moreover, in granting parenting time, the trial court must act in the children's best interests (750 ILCS 5/602.5, 602.7 (West 2020)) and it is well

settled that a party cannot bargain away his or her children's best interests (see, *e.g.*, *In re Marriage of Case*, 351 Ill. App. 3d 907, 912 (2004) ("parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the court's satisfaction, the parties' agreement is in accordance with the children's best interests")). Accordingly, we remand for modification of the allocation judgment to clarify that, even after respondent completes the requisite 26 therapy sessions with Dr. Chinni, there must be compliance with the hearing requirements of section 603.10(b) of the Act before any modification to respondent's parenting restrictions.

¶ 72                                III. CONCLUSION

¶ 73    For the reasons stated, the judgment of the circuit court of Lake County is affirmed in part and remanded in part, and the appeal is dismissed part.

¶ 74    Affirmed in part; dismissed in part; cause remanded.